## THE PETERSBURG SAVINGS AND INSURANCE COMPANY *vs.* THE MANHATTAN FIRE INSURANCE COMPANY.

1. It is no ground to suppress interrogatories executed in Delaware that the witness did not exhibit to the commissioners, as requested, books of account which he testified were in Mississippi.

(*a*) A witness cannot be required to attach to interrogatories a merchant's books of account. A transcript should be asked for.

2. Where, on objection by defendant's counsel to certain interrogatories, a part was ruled out and a part ruled in, and subsequently counsel for defendant introduced those parts which had previously been ruled out, the ruling of the court is not a ground for new trial on behalf of the defendant.

3. Although a merchant may have entered on his books the amount of an inventory of his stock at a specified time, yet if he testifies positively to the correctness of a statement containing such amount, made up by himself and his clerk, and attached to the interrogatories, and the books are beyond the jurisdiction of the court and inaccessible to the witness, his testimony is admissible.

4. Where a certificate purporting to have been signed by a justice of the peace was attached to interrogatories for identification, and the witness testified that "the certificate was in the handwriting of Stockdale, attorney, and Bacot, justice of the peace," it might reasonably be inferred that the witness meant that Stockdale wrote and Bacot signed the certificate; and it was admissible.

(*a*) In a suit on an insurance policy, one issue raised by the defendant being that it was a badge of fraud that the insured did not furnish from the nearest magistrate a certificate concerning his loss, but furnished certificates of other magistrates near by, a certificate actually made and furnished from the nearest magistrate, to the effect that he had examined into the loss and believed it *bona fide* a total loss of a good stock of goods, but had not had time to examine as to the exact amount of the loss, was admissible, although such a certificate did not fully meet the requirements of the policy in failing to state such amount.

5. Refusal to give a request in charge will not necessitate a new trial where the request was substantially covered by the charge as given.

6. Requests not applicable to the case should not be given.

7. The charge complained of in the sixth ground of the motion for new trial was not unsupported by evidence.

8. A common agent of the insurer and the insured could not cancel the policy, but would be competent to convey from the former to

the latter passingly notice of demand for cancellation.    But to effect a cancellation before the payment of the premium, the notice, in the shape in which it reached the insured, must have been an uncondi-tional demand for cancellation, and not a mere expression of desire.

9. Although a section of a charge, taken alone, may seem objectiona-ble, yet if, when construed in connection with its context, it is proper, a new trial will not be granted on that account.

Evidence.    Interrogatories.    Practice in the Superior Court.    Charge of Court.    Principal and agent.    Insur-ance.    Before Judge HILLYER.    Fulton Superior Court. October Term, 1880.

The Manhattan Insurance Co. sued the Petersburg In-surance Co. on a policy of fire insurance No. 13,437, being a contract of re-insurance of a risk arising on policy No. 112, of the Manhattan Fire Insurance Co., of date 15th April, 1879, and issued to G. M. Spencer, of McComb City, Miss.    The jury found for the plaintiff, and the de-fendant filed a motion for new trial, which was overruled and defendant excepted.

The evidence was in substance as follows :

The plaintiff introduced a policy of insurance No. 112, by which the " Manhattan Fire Insurance Co., of New York city, in consideration of the payment of $101.25 do insure G. M. Spencer, of McComb City, Miss., against loss or damage by fire to the amount of $4,500.00.

Four thousand two hundred dollars on his stock of gen-eral merchandise—not extra hazardous—such as is usually kept in country stores, contained in the two story frame shingle roof building, situated on southeast corner of block 38, McComb City, Miss.

Three hundred dollars on his office-room, furniture and store fixtures contained therein.

Two thousand five hundred dollars insurance, concur-rent herewith, in the Planters' Insurance Co., of Jackson, Miss."    The policy extended from April 15th, 1878, for one year.    Loss was payable sixty days after proof of loss was received.

The usual restrictive clauses and conditions follow, none of which are material to be set out here except the following:

"IX. Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the company, in writing, and as soon after as possible render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of all the written portions of all policies thereon; also the actual cash value of the property and their interest therein; for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof, at the time of the loss were used; where and how the fire originated; and shall also produce a certificate under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, not related to the assured) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property assured to the amount which such magistrate or notary public shall certify."

Plaintiff introduced policy No. 13,437, by which the Petersburg Savings and Insurance Co., "in consideration of the sum of $53.44, to them paid by the assured hereinafter named, do insure Manhattan Insurance Co. to the amount of the sum of $2,500.00, for the term of eleven months and twenty-five days, upon five-ninths of their liability as insurers under their policy No. 112, issued at their agency at Summit, Miss., to G. M. Spencer, to the amount of $2,500.00 for the period of time from April 20th, 1878, to April 15th, 1879, on a stock of general merchandise such as is usually kept in country stores, not extra hazardous, contained in the two story frame shingle roof building, situated on the southeast corner of block 38, McComb City, Miss.; $2,500.00 insurance concurrent herewith in the Planters' Insurance Co., of Jackson, Miss. It is understood and agreed that this company shall not be liable for a sum greater than such portion as the sum hereby re-insured bears to the whole sum insured on the property by the company re-insured, and, in case of loss,

this company to pay their *pro rata* at the same time, manner and form as the company re-insured."

The usual printed conditions follow, none of which are material here, except that it was provided that the loss should be paid sixty days after due notice and proofs of the same, made by the assured and received at the office of the company in the city of Petersburg in accordance with the terms of this policy.

In case of loss, substantially the same provisions as to notice, proofs of loss, certificates of magistrates, examinations, etc., are provided as those contained in Manhattan policy No. 112, already set out.

A number of letters written by the officers and agents of the Manhattan Insurance Co. to the officers and agents of the Petersburg Savings and Insurance Co., and the replies of the latter thereto, were tendered and admitted in evidence, the point of said letters and replies being that the Petersburg company, within a few days after the fire occurred, and as soon as notified thereof, and again upon subsequent demands, denied all liability to the Manhattan Company on their policy of re-insurance, claiming that said policy was cancelled before the fire took place, and that no premium had been paid.

Plaintiff introduced in evidence a power of attorney, in usual form, from G. M. Spencer to Clark Brothers, empowering the said Clark Brothers to collect and pay over to Spencer's creditors the amount due on Manhattan policy No. 112. Also the receipt of the said Clark Brothers, indorsed on the back of said policy, acknowledging the collection by way of compromise, and in full satisfaction of the sum due on the same, of the sum of $3,000.00 from the Manhattan Company.

Plaintiff introduced the testimony, by interrogatories, of G. M. Spencer, the most material portions of which are as follows :

" Prior to and up to July 10th, 1878, was engaged in mercantile business in McComb City, Miss., and had been so

engaged at said place from September, 1875. Was sole proprietor July 10th, 1878, though I continued to use the name of G. M. Spencer & Co., a name which I had formerly used when I had a partner I. P. Gatlin was my clerk. The store and stock therein were totally consumed by fire, July 10th, 1878. The whole of the first floor was used as a store-room, and occupied by me. There were seven rooms on second floor, one of which R. Bacot, J. P., occupied; the other rooms variously occupied, some of them by me, and some vacant. The first floor contained a complete stock of dry goods and groceries, and the room on the second floor, occupied by me, contained a general stock of furniture, and these comprised the stock of goods. Do not know how fire originated; was at home. Hearing alarm given I was aroused from sleep. Hurried down. The building and goods were so far consumed that saving efforts had been abandoned.

The cash value of the stock of goods contained in said building at the date of fire was $11,609.40, exclusive of charges for freight. I reach such valuation by taking the amount of stock on hand at the time of inventory, September 30th, 1876, together with purchases from that time to July 10th, 1878, and deducting amount of sales from said stock. On September 30th, 1876, made an inventory of the stock. That inventory amounted to $9,346.75. The purchases amounted in the aggregate between the date of such inventory and the fire, to $24,375.17. I have looked at the paper marked exhibit "A," and it contains the amount of the inventory taken September 30th, 1876, and amount of invoiced purchases from said date to July 10th, 1878. I prepared such paper, with the assistance of my clerk, I. P. Gatlin, and it is correct.

I have looked upon the paper marked "C," and prepared it with the assistance of my clerk, Gatlin. It represents the monthly sales from September 30th, 1876, to July 10th, 1878, and is correct. Amount of sales between

said dates is $34,032.92. Average profits on sales something over 20 per cent. The schedules annexed do not include freight, and I cannot give accurate amount of freight. Disregarding inventories, purchases and sales, but answering from my general knowledge of the value of such stocks as was the one consumed, and from my acquaintance with its character and extent, I should say it was worth on the morning of July 10th, 1878, $11,609.42, with addition of freight added thereto. and 20 per cent. prospective profits. Have twenty years experience with short intervals in this kind of business."

Witness identified premises as those described in policy No. 112. The cash value of office-room and store fixtures consumed, was $531.20.

Witness identified exhibit " B " as correct. Owned policy No. 112, and transferred it to Clark Bros., in trust for creditors.

"After the fire I gave notice to the Manhattan, and procured duplicate invoices as far as I could, and when I could not procure duplicates I furnished copies from my own ledger. I applied to R. Bacot, the nearest justice of the peace, for a certificate. He showed an unwillingness to take any steps in the matter. I then went to the next nearest, Matthews, who subsequently made out the papers. July 10th, 1878, Bacot lived one mile from the fire, and had an office in McComb City. Matthews lived two and a half miles from the fire.

The inventory of September 30th, 1876, was made by going through the entire stock of goods and taking an exact account of the cost of each article. It was my habit at stated times in the year to take an informal estimate of stock. Cannot say how long before the fire the last estimate was made, or the result, for want of data. Bacot and Matthews were both justices of the peace in Pike county, Miss. The fire occurred through no fault of mine.

The inventory of September 30th, 1876, was destroyed by the fire of July 10th. I remember that the amount

was $9,346.75, from the fact of its being on my ledger. I get my invoices, letters, A to W, and 1–17, from the parties from whom I purchased, they being certified copies, and I get invoices of schedule 18 from my ledger.

The originals or duplicates are still in the possession of the Planters' Insurance Company, and not within my reach. I saved from the fire, one ledger, journal and cash book. None of my books or papers are with me, and I cannot exhibit them to commissioners. I applied to Bacot, but he showed an unwillingness, pretending he had not time to attend to it. * * I first got from Bacot a certificate which was informal, and afterwards applied to Matthews. Some additional proof being still required, I applied to C. M. Lyster, J. P., and got a certificate from him. * * * Bacot occupied an office in the very building that was burnt, and Lyster was distant two and a half miles, at Summit."

Exhibits A, B and C were introduced, containing a statement of the purchases, sales, and amount on hand at the time of the fire; also the furniture, etc.

[These interrogatories were executed in Delaware.]

Plaintiff introduced depositions of I. P. Gatlin, which, in their main features, were like those of Spencer.

Defendant introduced H. C. Stockdell, who testified, in brief, as follows:

I was special agent of the Petersburg company. I think I indorsed, as such agent, the daily report of J. C. Whitner & Son, in which the policy in suit was mentioned. I did not approve the risk, and had not the authority to do so. I recommended the risk to the Petersburg company. I had authority to cancel policies, and to direct our agents here to issue policies, but sometimes I was overruled afterwards by the company. At the time the policy sued on was written, I had some talk with Mr. Raine as to that particular risk. Raine said to me that he had a heavier line than he wished to carry, and asked me to re-insure it. I said I would instruct

Whitner, the local agent, to write the policy. I had no absolute authority in recommending risks to bind the company. I stood simply between the agent and the company, and was the agent's authority for writing the policy. I had authority to cancel policies. I did give instructions to the local agent to cancel this policy. The order was given some time between the 25th of April and the 1st of May. I am quite positive it was either the 27th or 28th of April. Whitner was the local agent of the Petersburg company in Atlanta, and was local agent for the Manhattan at the same time. He was local agent for Atlanta and vicinity. By local agent I mean he had charge of the company's business at that point. A short while after the above instructions were given to Whitner, the local agent, I had a conversation with Raine in reference to re-insurance. I asked him what he was doing about the re-insurance. He replied that they gave him so much trouble he was having it all done in New York. The only trouble we had had was about the policy. The instructions given by me to Whitner were verbal. They were given to John A. Whitner. John C. Whitner & Son were our local agents at Atlanta, and also, according to my understanding, local agents for the Manhattan company. Was special agent of Petersburg company from May, 1877, to May, 1880. Identify proof of loss sent by plaintiff to defendant. This proof of loss was introduced by defendant.

John A. Whitner sworn: I was local agent of defendant on 20th of April, 1878. Held no position for plaintiff. John C. Whitner & Son (witness being the son), were agents for defendant, John C. Whitner, my father, was local agent for plaintiff. John C. Whitner & Son issued the policy in suit. $53.44 premium was paid, but was not paid until on or after the 1st of May. I did not personally receive instructions as to cancellation from Mr. Stockdell. In consequence of information received from my book-keeper as to cancellation, I went to Raine's office

and informed him that the company wished to cancel policy. We did not cancel at that time, because I agreed to let it stand, for the simple reason that Mr. Raine stated that Mr. Stockdell had agreed to do the re-insurance for him through our agency, and he did not like the way of the company disapproving and putting him to so much trouble about these re-insurances; and after making that objection, I agreed to let it stand until he could see Mr. Stockdell. I told him that the company declined to carry the policy. I went immediately to Raine on my book-keeper's informing me of the fact, the same day. The premium was never sent to defendant. The money is in our possession and has been ever since it was paid to us, *i. e.* in the hands of John C. Whitner & Son. I made no further demand of Mr Raine for that policy specially. When he returned from New York I went to his office and stated to him that if he would send in all the policies that were ordered cancelled, I would check them. There were other cancelled policies. I did not see Stockdell after Raine told me he had promised to carry this policy, nor inform him of it. Raine had other policies in other companies at our agency, cancelled. Afterwards I went to Raine and asked a return of all the policies cancelled, and Raine instructed his clerk to bring down a list and check them over with my book-keeper, and I gave a check for the balance. I then thought at that time that this policy was included in those I gave a check for, did not discover my error until after the fire. My clerk, Lamar, I am informed, had previously advised the Petersburg company that this policy was cancelled. John C. Whitner was sole agent of the Manhattan, and with me agent of the Petersburg. He got all the commission from the Manhattan and only a portion from the Petersburg. I was interested in the agency for the Manhattan only as clerk for my father. When I notified Raine that the Petersburg desired this policy cancelled, I did not tender the premium. I made no special demand on Raine for this policy.

C. A. Lamar sworn: I notified Mr. Raine's clerk and book-keeper, Mr. Hancock, that the Petersburg company had ordered policy number 13,437 cancelled. He brought down a list of cancelled policies. I saw the Petersburg policy was not in the number, and told him I was authorized by Mr. Whitner to write out a check including said policy. He said he could not cancel that policy. I asked him why the Petersburg was not included, and he said he could not include that. The paper shown me is in my handwriting. It is an account current made out by me and forwarded to the Petersburg company. In this report this policy is noted as "returned to the company." As soon as I received the notice of the order to cancel, I notified it to Mr. Whitner. I was clerk for John A. Whitner & Son, in 1878. I was authorized by John C. Whitner to include the Petersburg policy in the check for returned premiums, and when I told Hancock to include this policy he said he could not do it, that he was not authorized to do it in Mr. Raine's absence.

Defendant introduced in evidence report above referred to.

Defendant also introduced exhibits from interrogatories, being statements of the loss and certificates of magistrates near the loss.

Plaintiff introduced in rebuttal the certificate of Robert Bacot, J. P., the nearest magistrate, to the effect that he had examined the circumstances of the loss and believed it to be a loss, without fraud, of a good stock of goods, and that, from want of time, he was unable to certify as to the exact amount.

R. A. Hancock sworn: I was clerk of Mr. Raine, general agent of the Manhattan, in April, 1878, and his book-keeper. Remember the conversation with Lamar above detailed. Policy No. 13,437 was then in New York. Don't know where Raine was. I took the Western policies to Whitner's office by order of Raine. When I went back to Whitner's office Lamar remarked that he

wanted the Petersburg policy cancelled. Did not demand it or tender premium. I had no power to cancel it. Think I afterwards casually mentioned conversation to Raine. My recollection as to that is uncertain.

J. S. Raine sworn: I told Stockdell that we had a heavier line of risks than we cared to carry, and asked him if he would re-insure. He said he would, and would instruct the agent to issue a policy. The policy was issued and the premium paid to Whitner & Son. The policy was then sent to our home office in New York. Some time after that, I do not know how long, young Whitner came to me and said the company desired to cancel the policy, and I remarked to him that such acting would give us considerable trouble, and I did not want to be bothered that way. He then said he would see Mr. Stockdell. That was the last I heard of the cancellation. No demand was made on me for the policy after that, nor was the premium tendered back.

It was a very few days after the policy No. 13,437 was issued that Whitner came to me. He told me that the company desired that policy cancelled.

The premium on this policy was paid on the 3d of May.

H. C. Stockdell re-introduced: I went into Whitner's office and gave the notice of cancellation, my impression is, to young Whitner, but it may have been to Lamar. Raine said, in the conversation I had with him about re-insurances, that it gave him too much trouble here and he was going to New York. I remarked on that that I had recommended that risk to the company, but they went back on me, and Mr. Raine remarked that it was funny a company should go back on its agent.

Defendant introduced the depositions of Robert Bacot, who testified that he occupied an office on the second floor of the burnt building, and lost by the fire about $80.00 worth of property, and testified as to the circumstances under which his certificate was given.

The grounds of error alleged are stated in the decision.

R. J. MOSES; HOWARD VAN EPPS, for plaintiff in error.

JACKSON & LUMPKIN, for defendants.

SPEER, Justice.

The Manhattan Fire Insurance Co. brought suit against the Petersburg Savings and Insurance Co. to recover on a policy of fire insurance issued by the latter, the same being a contract of re-insurance of a risk arising on a policy of the Manhattan Fire Insurance Co., of date 15th April, 1879, (No. 112) and issued to G. M. Spencer, of McComb City, Miss. The jury, under the evidence and charge of the court, found for the plaintiff, and the defendants below filed a motion for a new trial, which was overruled, and defendant excepted.

The grounds of the motion were substantially as follows:

(1.) Because the court refused to exclude from the jury the interrogatories of G. M. Spencer, because the cross-interrogatories were not fully answered, in this: that he did not produce, as required, the original books or a transcript to the court, nor the original invoices that a transcript might be made by said commissioners, and because the evidence was hearsay.

(2.) Because the court did not exclude so much of sixth interrogatory as is marked in brief of evidence in the answer of G. M. Spencer.

(3.) Because the court did not exclude so much of Spencer's answer as fixed amount of inventory of 30th September, 1876, the same appearing to be derived from his books.

(4.) Because the court allowed to be read in evidence the certificate purporting to be signed by Robert Bacot, J. P., there being no proof of his handwriting.

(5.) Because the court refused to charge, as requested in writing by defendant, as follows:

(*a.*) "If this policy of insurance was made by a person, who, at the time, was agent of the plaintiff and likewise of the defendant, then I charge you that the policy of re-insurance was void, unless it appears that at the time of the re-insurance the defendant knew that its agent was also the agent of the plaintiff, and with this knowledge, authorized the re-insurance, or by approval or other means ratified the same."

(*b.*) "If the defendant's agent was, at the time of making policy No. 13,437, the local agent of defendant, with power to underwrite for risks in Atlanta and its vicinity, then I charge you that such agency did not authorize the agent to insure against a risk in the state of Mississippi, and such policy would not bind the defendant until the act was ratified by the defendant, and it devolves upon the plaintiff to show such ratification."

(*c.*) "If the plaintiff did not waive notice and proof of loss, and paid the three thousand dollars on a proof of loss that did not comply with the condition precedent contained in the policy, then such payment was a voluntary payment, and defendant is not bound to pay any part of the same. Defendant's liability is to pay five-ninths of what plaintiff was bound to pay or did pay, in full discharge of such amount as plaintiff was bound to pay."

(*g.*) "The total amount insured, as appears by the policy, is $7,000. You will first deduct $300 for furniture not covered by defendant's policy, and then defendant's liability, if you find it to be anything, will be the amount proved to be lost in goods bears to the whole amount of goods insured, and as that amount bears to the particular amount insured by defendant."

(*h.*) "If defendant, by its agent, re-insured plaintiff, and on defendant being notified of the fact ordered the policy cancelled, and this was before the premium paid, then there was no necessity to offer to return the premium. The notice of the order of defendant to cancel the policy operated as a rescision of the contract, and defendant

would not be bound by an agreement of defendant's agent not to cancel the policy if at the time plaintiff was notified that the agent's principal had instructed the agent to cancel it.

Because the court committed error when it charged the jury, after charging, in substance, that "the common agent of the principals could not make a contract to bind the principals, without a ratifications by the principals for whom he contracted," added these words, "but if Raine was then the agent of the Manhattan company, and Stockdell the agent of the Petersburg company, the court is of the opinion that Raine and Stockdell, if within their authority and in the scope of their duty to do such an act, it would be competent for them to enter into a contract of re-insurance, to carry on the negotiations and settle the terms of such insurance—then the Whitners, or either of them, might do the clerical part by writing out the policy and by affixing the signature to it."

"On that branch of the case, as to whether a contract was executed in those forms—if what the Whitners did was only to carry out and put on paper the terms of a contract previously agreed upon by Raine and Stockdell, the court is of opinion it would be a valid contract."

(7.) Because the court, after charging that the Petersburg company had the right to cancel the policy on its own motion, at any time after its date, without assigning any reason for it, adds : "Now the defendant, the Petersburg company, says that it did cancel ; the other side says that it did not. You are to judge between them upon that issue. Here again we fall upon the principle of the disability of a common agent between two parties to make a contract. Cancellation of a policy, under such circumstances, would have to be done by contract ; that is, it would have to be done by the action and intervention of parties ; and if the Whitners were joint agents, or the firm the agent of one, and a member of the firm the agent of the other, they would be under the same disability to ef-

fect the cancellation of a contract as they would be to create or bring into existence a contract. * * If the Petersburg determined upon a cancellation, and instructed the Whitners to effect it, whilst they would not be competent to make a contract or cancellation, yet the court is of the opinion that they or either of them would be competent to convey information passingly."

(8.) Because the court charged, "even though the Petersburg company may have resolved upon a cancellation, and even though they may have instructed their agents, John C. Whitner & Son, to demand an unconditional cancellation, if what Whitner communicated to Raine was not an unconditional demand of cancellation, but an expression of a desire upon the part of the Petersburg company that the policy should be cancelled, then the court is of the opinion that that would not destroy the policy, and that Mr. Raine would be authorized afterwards to go on and pay the premium under the original understanding— the contract had between Stockdell and himself—and, under that state of facts, the contract remaining after the fire occurred would be valid. You will observe that the issue here is, that it is contended on the part of defendant that the Petersburg company unconditionally refused to carry the risk, and demanded the cancellation. The plaintiff replies that what was communicated to Raine was not such an unconditional demand of cancellation, but an expression that the company desired to cancel. Now, if it was as contended for by the plaintiff, then I have explained to you what the result would be—the policy would still subsist. If the fact was as contended by defendant, then the policy would be cancelled in law."

1. The first ground of this motion is alleged error on the part of the court in not excluding the interrogatories of Spencer, because, in answer to cross-interrogatories, witness did not attach the original books or a transcript to the answers, nor the original invoices. The answer is that the commission was executed in Delaware, and the

witness' ledger, journal and cash-book, all that were saved from the fire, were at Summit, Miss., and he could not reasonably be expected to produce them to the commissioners. He could not have been required to produce and attach the original papers, only a transcript under the rule, and this was not demanded. To expect ledgers, journals or cash-books to be attached to answers, would scarcely be reasonable or necessary—and no transcripts from said books were sought for.

2. The second ground of error is in not excluding so much of the answer to the sixth interrogatory as is marked in the answer of G. M. Spencer. In certifying this ground the court says: "The court ruled out a part of the sixth and seventh interrogatories, and ruled in a part; subsequently defendant's counsel tendered in evidence those parts which had been previously excluded on their motion, and also exhibits A, B and C from the interrogatories, and mentioned therein. This testimony was ruled in over objection of plaintiff's counsel. 22 *Ga.,* 607.

3. The third ground of error is in not excluding so much of Spencer's answer as fixed the amount of the inventory of September 30th, 1876—the same appearing to be derived from his books. The witness testifies positively as to an inventory made by himself and clerk, exhibited to the interrogatories, and if the inventory was entered on his books, and the books are inaccessible and beyond the jurisdiction of the court, we see no reason why this original may not be proved by the witness who made it and verified its accuracy.

4. As to the objection to the introduction in evidence of the certificate of R. Bacot, J. P., on the ground that Bacot's signature was not proved, a witness, Gatlin, did testify that the certificate was in the handwriting of Stockdale, attorney, and Bacot, justice of the peace, and it might reasonably be inferred from this testimony, the witness meant Stockdale had written it and Bacot had signed it as justice of the peace. As to its admissibility, see 36 Wis., 522; Wood on Ins., 710; 9 Cent. L. J., 190.

5. As to the alleged errors assigned on the refusal of the court to charge the jury as set forth in the fifth ground of the motion, and his charge as given on these points, we think the law of the case was given substantially and clearly in the instructions he did give to the jury.

The refusal to charge complained of in the fifth ground was, "That if the policy of insurance was made by a person who at the time was agent for plaintiff and likewise agent for defendant, that the policy of re-insurance would be void, unless it appears that at the time of re-insurance the defendant knew that its agent was also agent of plaintiff, and with this knowledge authorized the re-insurance or ratified the same." Without deciding whether this was a legal request, we think it was substantially given, when in another part of his charge the court did instruct the jury (whether right or wrong we do not decide) that the common agents of the principals could not make a contract to bind the principals without a ratification by the principals.

6. So as to the other refusal to charge as requested complained of by defendant in this ground of the motion, "That the re-insurance policy issued by the local agent of the company appointed for Atlanta and its vicinity was void, because said risk was taken on property in Mississippi, unless the act was ratified," it is sufficient to say, that the charge was inapplicable to the case as made and relied on by plaintiff. They claimed the insurance was effected by Raine the general agent of plaintiff and Stockdell the special agent of defendant, and that Whitner & Son only executed at their order the policy as clerks. Under the law of the cause as ruled by the court, they could not hope to rely upon the policy as issued by Whitner & Son alone. It is also complained by the defendant in this ground that the court refused to charge that, "If the plaintiff did not waive notice and proof of loss, but continued to require proof of loss and paid the $3,000.00 on a proof of loss that did not comply with the

condition precedent contained in the policy, then such a payment was a voluntary payment, and this defendant was not liable for any part of said voluntary payment." We think under the evidence furnished of the original loss submitted on this trial to the jury, there was sufficient to justify the plaintiff to make the payment of the $3,000.00 to the assignee of Spencer, and under this view the charge requested was not proper to be given to the jury. It must be borne in mind that the defendant below introduced the very proof of loss that had been served on the plaintiff by the party originally insured, and which had by plaintiff been served on defendant. Neither do we find any error in the court's refusal to charge as to the cancellation of the policy, as requested by defendant and as set forth in the latter part of the fifth ground of error in the motion. We think the court gave the law upon this point substantially in the seventh and eighth grounds of error complained of in the motion, and having so charged it, it was not necessary to repeat the charge requested by defendant, even if it had been correct.

7. In the sixth ground of the motion it is alleged that the court erred, in charging as requested by defendant, "That the common agents of the principals could not make a contract to bind the principals without a ratification by the principals for whom he contracted," by adding to said request these words, "But if Raine was then the agent of the Manhattan company, and Stockdell the agent of the Petersburg company, the court is of the opinion that Raine and Stockdell, if within their authority and in the scope of their duty to do such an act, it would be competent for them to enter into a contract of reinsurance to carry on the negotiations and settle the terms of such insurance, then the Whitners, or either of them, might do the clerical part by writing out the policy and affixing their signature to it, and that would be a valid contract." The request as thus modified is objected to as not being supported by evidence.

The recovery of plaintiff rested mainly under the law of the case as thus given in charge, for the court had instructed the jury that no contract of insurance made by Whitner & Son as the common or dual agents of their principals would be valid or binding unless ratified by the company. It was only by the alleged intervention and authority of the agents, Raine and Stockdell, as being the respective several agents of these companies that this policy could be sustained. We have therefore carefully examined the record as to the testimony on this point. Raine, testifying when asked as to what passed between him and Stockdell as to this policy, says: "We had a daily report coming to our office (the plaintiff's), of a larger line than we desired to carry, and I asked Mr. Stockdell if he would re-insure a portion of it, and he said he would, and that he would instruct the agents to issue policy. We made up our daily report, sent it over to the office of the Petersburg Insurance Company, and Whitner & Son issued the policy. I paid the premium," etc., etc. In his cross-examination he says: "I understood Mr. Stockdell to take this re-insurance for me, the policy was sent down to the Petersburg company, and they issued this policy."

Mr. Stockdell, a witness for defendant, proved that he was special agent of the Petersburg Insurance Company, and had authority to direct agents here to issue risks. When being interrogated as to this policy, he said: "At the time this policy was written I had some talk with Mr. Raine as to that particular risk. I stated to him I would authorize the risk. I had no talk with him about the general business, but it was in relation to that particular risk. I said I would instruct Whitner, the local agent, to write the policy."

Under our view of the law, we think the instruction of the court to the jury as set forth in this sixth ground was fully justified and sustained by the proof.

8. The complaint of the charge of the court, as set forth in the seventh ground, is as to the law of cancelling

policies. We think the rule was stated clearly and succinctly by the court. Here the court charged, " that the common or dual agents would not be competent to cancel, but they would be competent to convey the information passingly" of the company's wish or desire to cancel, but held that the notice of the purpose or determination of the company to cancel must be made or given unconditionally, " that a mere expression of a desire upon the part of the Petersburg company that the policy should be cancelled would not destroy the policy." We think the charge was properly and succinctly submitted on this point to the jury—so plainly that they were not liable to be misled thereby. 45 *Ga.*, 297; Wood on Ins., 231 ; May, pp. 68, 69; 8 Ins., L. J., 45.

9. It is further objected that in the eighth ground of the motion setting forth the charge of the court, the court expressed an opinion on the testimony to the jury in stating " that Mr. Raine would be authorized afterwards to go on and pay the premium under the original understanding—the contract had between Stockdell and himself."

Were this the only reference to this understanding or contract between Raine and Stockdell in the charge, this ground of error might be of great force and effect, but in other parts of his clear and elaborate charge in this case the judge had instructed the jury most impartially to consider and determine whether there was any such contract proved or established. In his view of the law the recovery of the plaintiff rested upon the existence of this contract and of its being satisfactorily established; for he had instructed the jury that the policy, if issued by these dual or common agents without the sanction or approval of the principals, would not be valid unless afterwards ratified. We must, therefore construe the charge excepted to here in the light of the whole charge, and hold that the court was referring to an " understanding or contract" between Raine and Stockdell, which he had be-

fore that distinctly left to them in his charge to find whether or not it existed. While this portion of the charge would be error if not explained or modified by the charge itself, yet we must give it that reasonable construction that the intelligent mind would decide it should be entitled to. The correctness of a charge must be determined by the whole when taken together. 11 *Ga.*, 331; 7 *Ib.*, 457; 9 *Ib.*, 539; 19 *Ib.*, 1.

In carefully, then, reviewing this whole record, both as to the law and evidence, we find no such errors as would lead us to control the discretion of the court below in refusing this new trial.

Judgment affirmed.