| 21 | 207 |
|---|---|
| 86 | 492 |
| 21 | 207 |
| 104 | 764 |
| 21 | 207 |
| 106 | 101 |
| 21 | 207 |
| f107 | 274 |
| 21 | 207 |
| o121 | 422 |

No. 45.—Behn & Foster, plaintiffs in error, *vs.* William H. Young & Co., *et. al.*, defendants in error.

[1.] When the bill states all that deeds mentioned in the bill could show, if exhibits of them had been attached to the bill, against the granting an injunction; that exhibits of them are not attached to the bill is no objection to the granting of the injunction.

[2.] When there is a fund in Court on which a judgment creditor can lay his hands without trouble, expense or delay, a Court of Equity will not, at the instance of other creditors, holding junior mortgage liens on the fund, force the

judgment creditor to proceed with his judgment against property in the hands of third persons, where he must encounter expense and delay in collecting his debt.

[3.] A Court of Equity will not lend its aid against a *bona fide* purchaser.

[4.] An affidavit, administered in Florida, to a bill for an injunction, will not be noticed here without authentication.

[5.] It is good ground to refuse an injunction, if the party against whom it is moved propose in the presence of the Chancellor to do all that a Court, on the most favorable construction of complainant's case, ought to decree for him, provided he complies with his proposition.

In Equity, in Dougherty Superior Court. Tried Before Judge ALLEN, June, 1856.

The bill was filed by William H. Young & Co., complainants, against Behn & Foster, partners, Benjamin O. Keaton, George W. Collier, Paul E. Tarver, John A. Davis and Andrew Y. Hampton, defendants, and alleges that at April Term, 1853, of Baker Superior Court, said Behn & Foster recovered judgment against said Andrew Y. Hampton for $2,423.73, besides interest and cost; that upon the appeal at November Term, 1854, a judgment for said sum and $302.96, damages for a frivolous appeal was recovered, upon which a *fi. fa.* issued.

That subsequent to this judgment of Behn & Foster, said Hampton, mortgaged seventeen negroes to said Benjamin O. Keaton, to secure a debt due to him of $10,597.51. He afterwards mortgaged to said Keaton five other negroes to secure a debt due to him of $2,263.44. He still later mortgaged to George W. Collier eight negroes to secure a debt due to him of $3,990.00, and afterwards, on the 26th may, 1854, said Hampton mortgaged to complainants six negroes to secure a debt due to them of $3,521.25.

At the subsequent terms of the Superior Court of Dougherty county, in May and November, 1854, a large number of judgments were obtained against said Hampton, which, with the mortgages aforesaid, are more than sufficient to exhaust and consume his entire property and estate. That under the *fi. fas.* which have issued upon said judgements, all the

Behn & Foster vs. Young & Co.

property of said Hampton, as well that included in said mortgages, as all other, was levied on by the Sheriff of said county, and on the first Tuesday in February, 1855, all said property, except that claimed by Mrs. Westfall and by the children of said Hampton, was sold by the Sheriff, by the consent and agreement of all the creditors, that the proceeds should be applied according to their respective rights and priorities of their liens, to be afterwards determined.

The negroes embraced in Keaton's mortgages sold for more than would satisfy his demands. The negroes embraced in Collier's mortgage did not sell for an amount sufficient to satisfy his debt, but there were some negroes in said mortgage claimed by Mrs. Westfall, which were not sold, and which, if subject to said debt, will discharge the same and leave a balance of about $1800, to be applied to other debts. The negroes embraced in complainants' mortgage and which were sold, failed by two hundred dollars to bring enough to pay their debt. But the negro woman unsold and claimed by Mrs. Westfall, and included in complainants' mortgage, if made liable, will fully satisfy their claim and leave a balance of several hundred dollars over. That after the sale, Behn & Foster gave notice to the Sheriff that they claimed, out of the proceeds of said sale, an amount sufficient to pay off their judgment, and afterwards the Court held that said judgment took precedence of and was entitled to the money over the mortgages.

The bill further alleges that complainants' mortgage was junior in date to all the others; that Hampton is hopelessly insolvent; and that the property embraced in their mortgage or its proceeds, is the only security-lien or fund, which they have and to which they can look for the payment of their demand. The bill further charges, that subsequently to the rendition of the judgment of Behn & Foster and the execution of the mortgages, Hampton conveyed several valuable lots of land, in the city of Albany, to different persons, some for valuable consideration and others purely voluntary; that

the claim of Mrs. Westfall to the negroes aforesaid is unfounded and will not be sustained; and that the property thus conveyed is far more than sufficient, when sold, to pay off the judgment of Behn & Foster; and that they should proceed with their judgment against the same, and leave the funds arising from the negroes contained in complainants' mortgage to be applied to their debt; and prays that said Behn & Foster be enjoined from claiming or receiving the proceeds or funds now in the hands of the Sheriff, in payment of their judgment.

Upon the filing of the bill, Judge ALLEN granted a *rule nisi* against Behn & Foster to show cause why said injunction should not be granted.

Defendants showed for cause:

1st. Because the deeds from Andrew Y. Hampton to Paul E. Tarver and J. A. Davis were not attached as exhibits to complainants' bill; and it appeared by the deed to Tarver, which defendants produced in Court, that it was older than complainants' mortgage.

2d. Because Behn & Foster here in Court, offered to assign to complainants their judgment against Hampton, upon their paying to them the amount due thereon.

3d. Because the facts set forth in complainants' bill showed no equity, and were not sufficient to authorize the Court, to interfere and injoin them from the enforcement of the *legal lien* of their judgment.

4th. Because the bill was sworn to before a Judge of Probate in the State of Florida, an officer not authorized by the laws of this State to administer an oath.

The presiding Judge held the showing insufficient, and granted the injunction.

Whereupon defendants' counsel excepted and assigned error thereon.

SLAUGHTER; HINES and VASON, for plaintiffs in error.

LYON, for defendants in error.

*By the Court.*—McDONALD, J. delivering the opinion.

On the rule to show cause why an injunction should not be granted, the defendants filed no answer, but objected for causes apparent on complainants' bill; for the want of a proper affidavit to support it; and because copies of certain deeds mentioned in the bill were not attached thereto as exhibits. The counsel for the defendants, Behn & Foster, offered to transfer or to cause to be transferred to the complainants, by the plaintiff, the *fi. fa.* against Hampton and Green, provided the complainants would pay to them the amount due thereon. The money was not advanced and the transfer was not made. The Court granted the injunction and the counsel for the defendants excepted.

[1.] The objection predicated on the failure to attach, as exhibits to the bill, copies of the deeds to Paul E. Tarver and J. A. Davis, was not a good reply to the motion for an injunction, however available it might be, at the hearing, to exclude the deeds as evidence. The bill admitted all that the exhibits could have shown material to the defendants in opposing the motion, viz: the date of the conveyances as compared with the dates of the judgments and mortgages. What equity the complainants can lay claim to under the statements in their bill in reference to these conveyances, we shall presently consider.

[2.] The defendants insisted that the bill showed no equity, and no reason why Behn & Foster should be enjoined from collecting their money from the mortgage fund in Court. There is a fund in Court, subject to defendants' judgment, brought there without their agency, sufficient to satisfy it and on which they can lay their hands, without trouble, expense or delay; and there is property subject to their judgment in the hands of third persons, claiming title thereto, against which it is the object of the bill to force them to go. According to the bill, the legal lien of Behn & Foster's judgment binds that property, but the legal lien of no other credi-

tor by judgment or mortgage reaches it, and for that reason, it is said, these creditors have two funds from which they can be satisfied, while the other creditors have but one, and that, therefore, they should be compelled to go against that property. A Court of Chancery will not restrain a creditor from obtaining satisfaction from a fund in hand, and compel him to encounter delay, expense and risk, for the accommodation of other creditors who wish to force him to satisfy his judgment from other property. If, contrary to the supposition of the complaints, that property should be in the hands of *bona fide* purchasers for a valuable consideration, they might have a strong equity against creditors who allow a fund from which they had it in their power to be satisfied, to be appropriated to junior judgments and mortgages having no lien on that property.

If the bill be true, the property conveyed to Davis is subject to all the creditors of Hampton; for the conveyances are alleged to have been entirely voluntary and without any valuable consideration whatever. The same may be said of Mrs. Westfall's claim, which is alleged to be founded on a pretended marriage contract which was never completed and which was abandoned and cancelled by the parties. Property thus held may be subjected to the payment of the debts of the party who has fraudulently aliened it, and Hampton's simple creditors may reach it as well as his judgment creditors, by encountering the necessary expense, trouble and delay. We are now remarking on the condition of the property as made by complainants' bill, which we are bound to assume as true for the purposes of this judgment. Mr. Davis and Mrs. Westfall are not to be prejudiced by a proceeding to which they are not yet parties.

[3.] Tarver, according to the bill, is entitled as much to the protection of a Court of Chancery as the complainants who wish to send the execution against the property conveyed to him. The *bona fides* of his dealings with Hampton is not assailed, and a Court of Chancery will not lend its aid against

a *bona fide* purchaser.   But if it would aid the complainants under certain circumstances, it would not aid them to the detriment of others who have as high claims as themselves. to its care and protection.   It cannot be assumed that either Davis or Mrs. Westfall will yield to Behn & Foster's judgment, without a contest, the property which they hold from Hampton; and it may unqestionably be presumed that Tarver, who has as much equity as complainants, will not, without an effort, allow the judgment creditors, Behn & Foster, who can compel payment of their judgment from a fund in Court, to permit that fund to be otherwise applied, for the purpose of proceeding against his property.   There must be both great expense and delay in the attempt to have satisfaction of Behn & Foster's general judgment from the property held by either Westfall, Davis or Tarver, and a Court of Equity will not force them to encounter it.

[4.] The affidavit verifying the statements in the bill was made in Florida.   The official character of the person administering the oath is not authenticated.   It cannot be recognized here without.

[5.] During the argument of the motion for the injunction, the counsel for Behn & Foster, in open Court, proposed to the complainants that the plaintiffs would transfer to them the judgment against Hampton and Green on payment to them of the amount due thereon.   This proposition came fully up to, and, perhaps, went beyond what the Court ought to decree for the complainants, if the case was to go to a hearing.   If the proposition had been acceeded to, there would have been no necessity for the injunction; and while Behn & Foster would have received their money, the complainants might have used the execution for the protection of their rights under the junior mortgage to the same extent that Behn & Foster might have used it for the same purpose. The order of the Court distributing the fund brought in under executions against Hampton, presented an obstacle to the accomplishment of that arrangement.   That order was,

and is yet, under the control of the Court, and might be so modified as to give effect to the proposition. There may be equities in favor of other parties, which might be affected by the transfer. If so, they ought to be protected, and we shall guard them in the instruction we shall give the Court below in the judgment of reversal we pronounce. The injunction will be retained until the judgment of this Court can be carried out.

.     Judgment reversed.