LYONS *et al. v.* THE PLANTERS' LOAN & SAVINGS BANK.

1. Demurring generally to the plaintiff's petition is pleading to the merits. After appearance at the first term and demurring generally at a subsequent term, it is too late to raise the question of service by motion or otherwise.
2. The omission of a prayer for process is amendable, and is waived by appearance and pleading.
3. The original petition contained enough to amend by, and the amendment allowed was proper.
4. The petition as amended embraced a cause of action. A promissory note given by the trustees and officers of a church and a suit thereon prosecuted to judgment against the makers, will not necessarily extinguish a debt of the church for which it was given. The question of fact whether it was given in payment or as collateral only, remained open.
5. A church site and edifice may be sold to pay the salary of the pastor. In contemplation of law, justice is not only a cardinal, but the pontifical virtue.
6. It is doubtful whether the 4th equity rule, touching exhibits to pleadings, is applicable in its full force since the act of 1887 establishing uniformity in pleading. Whether so or not, the right result of a case on its merits will not be disturbed because the record of a judgment referred to in the petition was not copied and annexed as an exhibit.
7. Where the material fact in controversy is only the existence of the debt, the judge may decree the appropriate equitable relief under the allegations of the pleadings and the admissions of the answer, upon a verdict of the jury finding in favor of the plaintiff so much for principal and so much for interest. The decree rendered in this case, that the church property be sold by the sheriff, the proceeds applied to the debt and the surplus, if any, turned over to the trustees, was proper.

December 31, 1890.

Demurrer. Practice. Service. Process. Waiver. Amendment. Equity. Pleadings. Churches. Before Judge Roney. Richmond superior court. April term, 1890.

Reported in the decision.

Twiggs & Verdery, for plaintiffs in error.

Charles Z. McCord and Leonard Phinizy, *contra.*

Bleckley, Chief Justice.

1. The first thing is the question of service. If the defendants below were not before the court in a way to bind them, and if they presented that objection in due time and manner, what was done as the outcome of the proceedings would have no final result. The complaint as to service was that, although there was a *subpœna* annexed to the original bill, there was no copy of that *subpœna* served on the defendants, copies of the bill only being served. The case was returnable to the October term, 1888. At the appearance term the names of counsel for the defendants as appearing in their behalf, were entered on the bench-docket. On April 12th, 1890, the defendants demurred to the petition, "because said petition and the matters therein contained in manner and form as therein stated and set forth, are not sufficient to constitute a cause of action," and on several special grounds, one of which was "because there is no copy process annexed to any of the copy petitions served upon defendants." The special demurrer was not sworn to so as to entitle it to stand or be treated as a dilatory plea, in which character it would have to be sworn to. Code, §3456. Of course such an averment as a ground of special demurrer was no more than blank paper, for no such defect as want of process annexed to the copy petitions served on defendants, appeared upon the face of the petition or elsewhere in the record. To demur generally to a petition as presenting no cause

of action is to plead to the merits of the case. Here, then, was appearance and pleading to the merits, which under the code was a waiver of service, a waiver which would have been effective had there been no process even to the original petition nor any service whatever. Code, §3335. After this it was too late to raise the question of service, whether by motion or by plea, for why should the defendants invoke the judgment of the court on the cause of action by demurrer, unless they were to be bound by that judgment when rendered? The demurrer was overruled on the first day of the April term, which was the 21st of April, 1890, "upon petitioner's properly verifying the petition and amendments." This condition was complied with on the 29th of April, and not until the previous day was any separate motion made to dismiss because no copy process was attached to the copy petitions served upon the defendants. An additional ground of the motion then made was because the sheriff failed to serve the defendants personally with a copy of the petition. This motion was too late as coming after pleading by general demurrer to the whole action. It follows that there was no error in treating the defendants, in all the subsequent proceedings, as properly in court.

2. We think this was true, although there was no prayer for process either in the original or amended petition, since all such defects are now amendable (Code, §3479). And inasmuch as amendment may be made at any stage, even after verdict, amendable defects are waived by appearance and pleading.

3. The next question is as to the allowance of an amendment to the plaintiff's petition, the amendment being objected to as introducing a new cause of action, and for the further reason that the original petition contained nothing to amend by. Without going fully into the contents of either, we may state in

general terms that the original petition, although very meagre, set up a claim to have the church property in question applied to the payment of a debt which the church owed to a former pastor for services as a clergyman. It is alleged that this debt was evidenced by a promissory note executed by the trustees and officers of the church in pursuance of a resolution passed by the church, which note had been indorsed by the payee, and that suit in favor of the plaintiff was then pending upon the note in the city court of Augusta. An injunction was prayed for, the object of which was to prevent any disposition of the church property before the result of that suit should be reached, and to hold the title of the property *in statu quo* until the further order of the court, the legal title being in the Perkins Manufacturing Company and the equitable ownership in the church. The amendment amplified the statement as to the debt, alleged it to be the debt of the church, averred that the suit on the note had been litigated, had resulted in a judgment in favor of the plaintiff, that the defendants in that suit were personally insolvent and that the *fi. fa.* founded on the judgment had been returned *nulla bona.* It prayed that the church property be subjected to the debt as the debt of the church, and called for equitable intervention because the legal title was not vested in the church nor in the defendants in the common law judgment. It treated that judgment as against the officers and trustees of the church in their personal and individual character and not in their character of trustees and officers, the theory of the plaintiff evidently being that the note was not given in satisfaction or extinguishment of the debt which the church owed to its pastor, but only as collateral security for the same. The original petition had subserved its immediate purpose when the amendment was offered. It had kept the title to the church property *in statu quo* until the

common law suit had proved fruitless. But it had a further object which was to render that property available for payment of the debt in case payment should not be realized out of the collateral note and the suit predicated thereon. The petition was, therefore, a foundation on which to build by amendment, in case further equitable proceedings should become necessary, and this contingency was realized when the makers of the note, at the end of legal process against them, proved insolvent. The matter of the amendment was thus proper material for a supplemental bill, and by our code, §4181, could be brought in by way of amendment. We hold, therefore, that the court did not err in allowing the amendment.

4. The amendment which we have discussed was filed on the 18th of April, 1889, nearly one year before the demurrer was interposed. Did the petition as amended present a cause of action? The parties before the court were the Bank (the indorsee of the note given by the officers and trustees of the church), as plaintiff, and the church, represented by the trustees, the Perkins Manufacturing Company, together with the indorser, the original payee of the note, as defendants. Thus all the parties interested in the original contract between the church and its pastor, and in the ownership of the note which grew out of that contract, were represented. If that note was given and taken not in extinguishment of the church debt, but merely as collateral, neither the note itself nor the suit and judgment thereon in the city court would operate as a discharge of the debt. *Wylly* v. *Collins*, 9 *Ga.* 224. The petition treats the debt as still subsisting, and as one to be paid by the church, now that the collateral security has been prosecuted to a return of *nulla bona.* This security is both legally and equitably the property of the bank, the bank having purchased it for value.

Such being the case, the bank has the equitable owner-
ship of the debt owing by the church, the collection of
which out of the church property is the ultimate object
of this action.   The question of fact whether the note
was given in discharge of that debt or only as collat-
eral security for it, would be for determination by a
jury, and that question, we may assume, was properly
submitted to the jury on the trial which finally took
place.

5. Treating the debt as unpaid, can the church edi-
fice and the premises on which it stands, the same being
a city lot in the city of Augusta, be subjected by a court
of equity, or rather by a court of law exercising equita-
ble powers, to its payment?   The church as an organi-
zation is the Antioch Baptist Church, and the equita-
ble ownership of the property is in it or in the trustees
which represent it in this action.   The formal legal
title is outstanding in the Perkins Manufacturing Com-
pany, which once had claims upon the premises as se-
curity for a debt now satisfied.   Here then is a debtor
having some property, perhaps sufficient property, to
discharge the debt.   Why should it not be so applied?
If any debt ought to be paid, it is one contracted for the
health of souls—for pious ministrations and holy ser-
vices.   If any class of debtors ought to pay as matter
of moral as well as legal duty, the good people of a
christian church are that class.   No church can have
any higher obligation resting upon it than that of being
just.   The study of justice for more than forty years
has impressed me with the supreme importance of this
grand and noble virtue.   Some of the virtues are in the
nature of moral luxuries, but this is an absolute neces-
sary of social life.   It is the hog and hominy, the bacon
and beans of morality, public and private.   It is the
exact virtue, being mathematical in its nature.   Mercy,
pity, charity, gratitude, generosity, magnanimity, etc.,

are the liberal virtues. They flourish partly on volun-
tary concessions made by the exact virtue, but they
have no right to extort from it any unwilling conces-
sion. They can only supplicate or persuade. A man
cannot give in charity or from pity, hospitality or mag-
nanimity, the smallest part of what is necessary to en-
able him to satisfy the demands of justice. It is igno-
ble to indulge any of the liberal virtues by leaving un-
discharged any of these imperative demands against us.
On the credit side of justice we can make any sacrifice
of it that we will, but on the debit side we can make
none whatever. I may burn as an offering my own
bull or lamb, but not that which rightfully belongs to
another owner. There is nothing more exalted than a
strict duty and its performance. What we freely give
cannot be better bestowed than what we pay in dis-
charge of a perfect obligation. The law grants ex-
emptions of property to families, but none to private
corporations or collective bodies, lay or ecclesiastical.
These must pay their debts if they can. All their prop-
erty legal and equitable is subject. *Atlanta* v. *Grant*,
57 *Ga.* 346. We think a court may well constrain this
church to do justice. In contemplation of law, justice
is not only one of the cardinal virtues, it is the pontifi-
cal virtue. Certainly it is an energetic measure to sell
the church to pay the preacher, nor would it be allowa-
ble to do so, if other means of satisfying the debt were
within reach. But the plain implication from the facts
alleged is that the church has no assets other than this
property, and on looking into the answer, we find that
the answer makes no suggestion of any other assets.

6. Touching that ground of the demurrer which
points out specially that the plaintiff has failed to
annex to the petition a copy of the record upon which
the common law judgment therein referred to is founded,
we need say but little. It is doubtful whether, since

the act of 1887 for uniformity of pleading in the superior court, the strict equity rule for attaching exhibits any longer applies. As to how that rule while in force was applied, see *Demere* v. *Scranton,* 8 *Ga.* 43; *Holliday* v. *Riordan,* 12 *Ga.* 417; *Groce* v. *Field,* 13 *Ga.* 24; *Brown* v. *Redwyne,* 16 *Ga.* 67; *Miller* v. *Saunders,* 18 *Ga.* 492; *Behn* v. *Young,* 21 *Ga.* 207; *Howard Mfg. Co.* v. *Water-Lot Co.,* 39 *Ga.* 574, s. c. 53 *Ga.* 689; *Patterson* v. *Turner,* 62 *Ga.* 674; *Graham* v. *Dahlonega, etc. Co.,* 71 *Ga.* 296; *Millbank* v. *Penniman,* 73 *Ga.* 136. It may be observed that the fourth equity rule as it stands in the code, p. 1354, seems to omit the word "other" in the second line, as will appear from a copy of the seventeenth equity rule in 2 *Kelly,* 484. It may be that under the new act, there ought to be some degree of conformity to the rule in pleading all material records and documents referred to in the petition. But where a case has had a right result in the court below on the merits, we do not feel called upon to reverse the judgment simply because that court may have been too liberal to one of the parties, in dispensing with the formality of annexing exhibits to the pleadings. There is no probability that the defendants were unacquainted with the contents of the record in the common law case, or that they suffered any substantial injury or disadvantage in the omission to set it out as an exhibit.

7. The verdict of the jury was as follows: "We the jury find verdict for plaintiff, principal $278.75, interest $97.60." On this verdict the court entered up a decree to the effect that the debt is that of the Antioch Baptist Church; that the property is subject thereto; that the debt be a lien upon it; that the sheriff levy upon it under and by virtue of the decree, expose it to sale according to law and execute title to the purchaser; that out of the proceeds of sale the debt and all costs be discharged, and that the overplus, if any, be paid

over to the trustees of the church; also that the de-
fendants be perpetually restrained and enjoined from
disturbing or in any way interfering with the title or
said property or the sale thereof, until the debt and costs
be paid off and discharged.   This decree is excepted to
as going beyond the verdict, and as being unwarranted
thereby in the light of the pleadings.   On looking into
the answer, we find that it raised but one material issue,
the other material facts being expressly or by fair im-
plication admitted.   The answer insisted that the note
on which the judgment at law was recovered, was given
and received in full satisfaction and extinguishment of
the debt due from the church to the pastor for his ser-
vices, and that the note was executed by the makers as
individuals and not as officers of the church; also that
they were sued as individuals and judgment recovered
against them accordingly. The jury having found in favor
of the plaintiff, they must necessarily have determined
that the note was not given in extinguishment of the
debt.   This was enough to warrant the court in decree-
ing appropriate relief adapted to the allegations of the
petition and the admissions of the answer.   We fail to
perceive that the relief awarded was inappropriate or
otherwise illegal.   The decree devotes the property to
the payment of the debt by judicial sale through the
sheriff, and directs the surplus proceeds, if any, to be paid
over to the trustees of the church.   We think the decree
as a whole was a proper one.        *Judgment affirmed.*