## SIMPSON *v.* WICKER.

1. Under the act approved December 20, 1899 (Acts 1899, p. 79), an affidavit in forma pauperis before a foreign notary, with his seal attached, is receivable in the courts of this State, and sufficient to prevent a dismissal of a bill of exceptions for failure to pay costs.
2. The refusal to dismiss a case because of a failure of the plaintiff to attach a bill of particulars does not afford ground for the grant of a new trial. Civil Code, §§ 5642, 4963.
3. The evidence was conflicting. There was testimony that at the time the services were rendered the defendant was a resident of this State, and shortly afterwards removed therefrom; so that the claim was not barred by the statute. Civil Code, § 3783.

Submitted May 24,—Decided June 9, 1904.

Attachment. Before Judge Fite. Gordon superior court. September 29, 1903.

Dr. Wicker brought suit by attachment against Mrs. Simpson. The defendant pleaded that the suit was barred by the statute of limitations; that she was a married woman and had never undertaken to pay the debt sued on, which was for medical services rendered to herself; and that the debt had been paid by her husband. The suit was brought in 1903. There was evidence that in 1895 the defendant, who had been residing with her husband in Alabama, returned to Georgia, where she had formerly resided, and while ill employed the plaintiff to render the services in question, agreeing to pay him out of her separate estate, and telling him that she had returned to Georgia to live; and that a few months thereafter she returned to Alabama and continued to live there until the suit was brought. The plaintiff testified that in 1898 he received, in reply to a letter he had written to the defendant, a letter from her, which was lost or mislaid, in which she admitted that the account sued on was correct, and that it was her own debt, and promised to pay it. There was evidence for the defendant to the effect that she had never moved back to Georgia, had never promised to pay the debt out of her separate estate, and had never treated it as due by herself. The jury found for the plaintiff. The defendant's motion for a new trial was overruled, and she excepted. The grounds of the motion, in addition to the general grounds, were, that the court erred in not dismissing the attachment suit on defendant's motion on the ground that the plaintiff did not attach a bill of particulars; and that the court erred in allowing the plaintiff to testify as to the contents of a lost letter from the defendant, admitting the debt and promising to pay it, over the objection that the suit was not based thereon.

On the call of the case in the Supreme Court, attention was called to the fact that the affidavit in forma pauperis had been made before a notary in the State of Alabama, and, though his seal was attached, that there was nothing to show that under the laws of Alabama a notary had the right to administer oaths, or that he was in fact a notary.

*C. E. Carpenter* and *Cantrell & Ramsaur*, for plaintiff in error.
*H. F. Sharp* and *Starr & Erwin*, contra.

LAMAR, J. 1. Under the requirements of the Civil Code, § 5614, the clerk of this court has raised the question as to

whether an affidavit in forma pauperis made in a foreign State before a notary public is sufficiently authenticated by that officer's seal, where there is nothing further to show that he has statutory authority to administer oaths. The matter is of practical importance, inasmuch as it involves the admissibility of such affidavits on applications for injunction, and in other legal proceedings. Nor is it free from difficulty; for there is great conflict in the decisions as to whether a notary public has the inherent power to administer an oath or to attest affidavits in any matter not connected with the protest of commercial paper. The question has never been directly and authoritatively passed upon in this State. In *Charles* v. *Foster*, 56 *Ga.* 612, it was decided that there was no presumption that he had any authority to attest a claim affidavit and approve a claim bond; this being out of the sphere of commerce, and involving the power of a magistrate or justice of the peace, his seal was no proof that he had such jurisdiction. In *Brunswick Hardware Co.* v. *Bingham*, 107 *Ga.* 270, "there was no authentication other than his own signature" that the person attesting the affidavit was a notary, it appearing both from the published opinion and the original record that no seal was attached. Outside of Georgia the decisions are directly in conflict on the subject. The courts of Alabama, Illinois, Michigan, Colorado, and Indiana hold that affidavits before a foreign notary are inadmissible when authenticated solely by his seal of office. Some of these decisions are based, at least in part, on the language of the statute defining the terms upon which foreign affidavits may be received in legal proceedings. In England, Maryland, District of Columbia, New York, and Minnesota the courts receive such affidavits when authenticated by the notary's seal. The Supreme Court of Minnesota, in *Wood* v. *St. Paul etc. Co.*, 7 L. R. A. 149, delivered a vigorous opinion to the effect that such affidavits were admissible when attested by the seal; and that whether the power of notaries to administer oaths and attest affidavits was of statutory or customary origin, it was universal, and that for a time beyond living memory affidavits made before foreign notaries, when attested under their seals, had been received in the courts of England. *Walrond* v. *Van Moses*, 8 Mod. * 323, was decided in 1722, before our adopting statute. There, on an application to change bail, the court held that " a plaintiff who

was in Holland might make affidavit there and get it attested by a public notary, and that it should be admitted as evidence to hold the defendant to special bail here." In Tucker *v.* Ladd, 4 Cowen, ·47, an affidavit taken before a notary in New Hampshire was allowed, over objections, to be read in a hearing in New York. 21 Am. & Eng. Enc. Law, 565. At one time there appears to have been doubt as to the power of notaries to attest affidavits in this State. It was removed by the act of 1863. Pol. Code, § 503 (4). This statute, however, was properly in part declaratory of a power already recognized. Prior to that date no act had been passed defining their duties, or authorizing notaries to administer any sort of an oath. When they were elected by the General Assembly (Acts 1814, p. 78) or by the courts (Cobb, 205), nothing was said as to their powers or duties. They were referred to as officers whose functions were well known, among which was the power to administer oaths. For the fee bill of 1792 (Cobb's Dig. 352) allows them to charge "for every protest and oath included," and for "administering *an oath in any other case.*"

From the act of 1792, therefore, it seems evident that the legislature assumed that notaries had the power to administer oaths by virtue of their office. It was a power not there granted but recognized as inherent in notaries the world over. That such was the practice appears from *Soloman* v. *Lacey, Dudley,* 82, when "the bare certificate of a notary public of New Jersey to the oath" was received here in 1831. And therefore, whatever the conflict elsewhere, there was fair room to contend that in this State there was a legislative recognition ·that they had the power by virtue of their appointment. If so, it was not necessary to produce a foreign statute to show that they could do what was here recognized as a power inherent in the office. Still the doubt continued, and in 1870 the legislature passed an act now contained in the Civil Code, § 5060, authorizing pleas, answers, and defenses to be sworn to before certain officers including notaries public; and as the greater includes the less, it was no doubt argued that if they had the right to make such answer which could be used as evidence on hearings for injunction, parties could likewise use in the same case affidavits attested by the same notary. This view, however, was not adopted in *Brunswick Co.* v. *Bingham,* 107 *Ga.* 273. Then came the act of 1899, by which the General Assembly

expressly declared that any affidavit made out of the State of Georgia before any notary public, justice, judge, chancellor or commissioner of any court of equity of the State or county where the oath was made, or before any other officer of said State or county who is authorized by the laws thereof to administer oaths, shall have the same force and effect, and be recognized in like manner, as if it had been made before any officer of this State authorized to administer the same. The proviso thereto did not make the act self-destructive and repeal it at the moment of its approval. The proviso was to the effect that the act should not apply to affidavits required to be made within the State of Georgia, nor should it impair or render invalid any of the existing provisions of law for making affidavits out of this State. For example, it did not repeal Civil Code, § 5060, relating to pleadings, nor Civil Code, § 3621; nor did it destroy whatever power to administer oaths was possessed by commissioners of deeds under the Political Code, § 120. *Sugar* v. *Davis,* 15 *Ga.* 462 (3)..

From the legislation generally, from their supposed customary powers, and from the language of the act of 1899, it is clear that foreign notaries are authorized to attest affidavits, and that the same may be received in legal proceedings here, with the same effect and under the same circumstances as if made in Georgia. The act of 1899 is, however, silent on the subject of what shall be sufficient evidence of their official character and power to administer oaths. It does not say whether a statement to that effect in the jurat will be sufficient; nor whether there must be attached a certificate from the secretary of State, or of the court making the appointment, or a copy of the statute conferring the power. It is evident that, so far as notaries are concerned, the silence in the statute must mean that the usual authentication by his seal of office is sufficient. Otherwise who can say what else is necessary, or how it is to appear that he is what he claims to be or has the authority to do what he actually does? The decision in *Shockley* v. *Turnell,* 114 *Ga.* 378, related to an affidavit before a clerk of a county court, with nothing to show that he was a clerk. He was not one of the officers named in the act of 1899, and there was no evidence that he had authority under the laws of Texas to administer oaths. We conclude that in the present case the affidavit in forma pauperis, attested as it was by a notary under his seal, is

properly receivable, and that the case should not be dismissed for failure to pay the cost.

2. The failure to attach a bill of particulars was a defect in the pleadings, which did not authorize a dismissal except in the event that after motion therefor the plaintiff failed by the second term to supply the omission. Besides, defects in the pleadings can not properly be used as a ground of a motion for a new trial. Civil Code, §§ 5642, 4963.

3. The evidence was conflicting, but there was sufficient to show that the claim was not barred by the statute. There was testimony that at the time the services were rendered the defendant was living in this State, and shortly afterwards removed to Alabama, where she has since lived. The statute did not run in her favor if such was the case. Civil Code, § 3783. The letter received by the plaintiff from the defendant, together with his positive testimony that the contract had been made with the wife and not the husband, was sufficient to establish that the debt was the wife's and not the husband's. There was no error assigned on the charge of the court, and the evidence was sufficient to warrant the verdict. *Judgment affirmed. All the Justices concur.*