## BALLEW v. BROACH & McCURRY.

1. The affidavit of the plaintiff in error, in forma pauperis, under Civil Code, § 5613, made in a foreign State, before an officer of such State, is insufficient unless the official character of the attesting officer is properly authenticated.

2. The allegations of the petition did not set forth a cause of action, and the court properly sustained the demurrer and dismissed the petition.

Argued November 17, — Decided December 10, 1904.

Action for damages. Before Judge Henry. Floyd superior court. February 4, 1904.

*Henry Walker,* for plaintiff. *Denny & Harris,* for defendant.

EVANS, J. 1. Upon the call of this case, the clerk, pursuant to his duty under the rules, directed our attention to the affidavit in forma pauperis of the plaintiff in error. This affidavit purports to have been made before a justice of the peace in the State of Tennessee, but there is no authentication of his official character. An affidavit made in a foreign State before an officer of such State is

insufficient unless it is made to appear in some legal way that the person attesting the affidavit was in fact authorized to administer the oath.     Thus, in *Behn* v. *Young*, 21 *Ga.* 213, it was held that an affidavit verifying a -bill can not be recognized in courts of this State when the official character of the person administering the oath is not authenticated.     The official character of a county clerk of a foreign State must be authenticated before an affidavit made before him will be received in courts of this State.     *Shockley* v. *Turnell*, 114 *Ga.* 378; *Castellaw* v. *Blanchard*, 106 *Ga.* 101. The rule was also applied to notaries public.     *Charles* v. *Foster*, 56 *Ga.* 612; *Brunswick Hardware Co.* v. *Bingham*, 107 *Ga.* 270. But since the act approved December 20, 1899 (Acts of 1899, p. 79), an affidavit before a foreign notary, with his seal attached, is receivable in courts of this State.     *Simpson* v. *Wicker*, 120 *Ga.* 418.     The seal of the notary public being evidence of the genuineness of his signature and of his official character, no further authentication is required.     The act of 1899 just referred to provides that "any affidavit made out of the State of Georgia before any notary public, justice of the peace, judge of a court of law, or chancellor, commissioner, or master of any court of equity of the State or county where the oath is made, or before any other officer of such State or county who is authorized by the laws thereof to administer oaths, shall have the same force and effect, and be recognized in like manner, as if it had been made before an officer of this State authorized to administer the same; provided, that this act shall not apply to such affidavits as are by law required to be made within the State of Georgia, nor have the effect to impair or render invalid any of the existing provisions of law for making affidavits out of this State."     Mr. Justice Little, in *Shockley* v. *Turnell*, supra, construing the proviso of this act, said (page 383): "If the act is not to affect any of the existing provisions of law as to the validity of affidavits made out of this State, it can not, of course, affect the question under consideration; for, as we have shown, such affidavits, under the laws of this State existing at the time of the passage of this act, must, in order to be rendered valid, be accompanied with proof that the officer has authority to administer oaths, as well as of the fact that he is such an officer." It is clear, we think, that the necessity of presenting proper authentication of the official character of the officer administering

the oath promulgated in a foreign State is not dispensed with by the act of 1899. The affidavit, being defective in this particular, was not a compliance with the Civil Code, § 5613, as to payment of costs or filing an affidavit in forma pauperis. Permission was granted the plaintiff in error to pay the costs; and upon the certificate of the clerk that the costs have been paid, the bill of exceptions will be retained.

2. The question raised in the bill of exceptions is the correctness of the judgment sustaining a demurrer to the plaintiff's petition. The petition as amended set forth the following facts: Plaintiff "is a skillful and competent mechanic, 23 years of age." In March, 1903, he entered the employment of the defendants, and, being "a skillful wood workman, possessed of special fitness in operating a matching machine, he was employed to run the matcher" in their planing-mills. "Whilst dressing weatherboarding on the matcher, he was called by McCurry, who was then dressing flooring on the moulder, to take up his work, saying: 'I want you to take this thing and go ahead with it,' meaning Ballew continue his unfinished work dressing flooring on the moulder." It was an old-style, second-hand machine. In operating it, McCurry became familiar with it and knew it was hazardous to himself, but, "without a word of warning, he intentionally shifted all danger from himself to Ballew." He was ignorant of any danger in operating this machine, and "it was the duty of defendants to warn him of the risk he unconsciously assumed, which was known to them." Within five minutes after beginning work on the moulder, the two inch belt, seven feet between the pulleys, much worn by use as a feed belt, fastened at ends by iron hooks instead of leather lace, ran off the pulley. No means being furnished by defendants to put the belt on the pulley, he used a file. It caught in the hooks, which from constant use had worn thin and turned up at the ends. The belt was put on the pulley, but the file was caught by the hooks and suddenly snatched by the belt and broken, a fragment of the file striking plaintiff's hand and seriously injuring it. Immediately after the injury, McCurry said to the plaintiff: "I came very near being hurt in the same way you are hurt, a few days ago." The belt was at the right-hand side of the moulder, two feet beneath its top, not in plain view of the plaintiff while running the flooring

through the machine, being hid by a large belt and the machine. When plaintiff took up his work at this machine the belt was swiftly running, and he could not distinguish between leather lace and iron hooks, and did not know iron hooks were used to fasten the belt. Plaintiff was not employed to work at the moulder, but to operate the matcher, which was a safe machine and with the operation of which he was familiar. When called on to operate the moulder, to which he was unused, he did not know the belt was fastened with worn-out hooks, unsafe and unsuited for such use and known to be so by defendants, who wilfully and negligently continued the hooks in use instead of leather lace, "which was better and safer for tieing the belt." "Defendants knew, or ought to have known, of defects of this character in the machinery, and warned petitioner in respect to the same, who had not equal means with them for discovering such defects," and did not know of the same. Defendants were guilty of a breach of duty to him in putting him to work in an unsafe place, instead of employing him in his usual and customary work on the matcher. "Defendants neglected to provide any safe means to put on said belt after it run off, and nothing at all except said file, nor was there any other means at hand for use in such emergency, and said file was unfit and unsafe for the use thus intended by defendants in putting on said belt, and they knew it and plaintiff did not know it." The wound received by the plaintiff was described, and he alleged that he suffered therefrom much pain. He sued for special damages and also for counsel fees, because, he averred, the defendants had been stubbornly litigious and had acted in bad faith and caused him unnecessary trouble and expense. The defendants filed their demurrers, both general and special, and the court sustained the demurrers and dismissed the plaintiff's action, wherefore he excepts to the judgment thus disposing of the case.

As will have been observed, the most striking feature of the plaintiff's petition is the numerous charges of negligence preferred against the defendants. Many of these complaints are so obviously without merit that they may be summarily disposed of, in view of the fact that the plaintiff was not an employee of tender years, but "a skillful and competent mechanic, 23 years of age." He asserts that he was employed to run the matcher; that the

defendants had no right to call on him to operate the moulder, and he would not have been injured if he had been permitted to perform his usual and customary work. The time to have made the point that he was under no contractual duty to operate any machine other than the matcher was when McCurry told him to go to work on the moulder. It was "an old-style, second-hand machine." But to put a skillful and up-to-date mechanic at work on such a machine is not, per se, actionable. In operating that machine, "McCurry became familiar with it" and "knew it was hazardous to himself," but nevertheless, "without a word of warning, he intentionally shifted all danger from himself to Ballew." Wherein this danger lay is not alleged; whether it was latent, and not such as a skilled mechanic should without warning have taken cognizance of, does not appear. Though for a period of about five minutes, while operating this machine, the plaintiff may have been exposed to a hidden danger of which he was not warned, certain it is that he was not injured because of the defendants' failure to give him any warning in regard to such danger. One can not recover for negligence which in no way brings about or contributes to an injury sustained by him. The plaintiff does not pretend that, because of any latent defect in the moulder, the belt ran off the pulley; that it habitually did so, or had ever before done so, or that the defendants had any reason to anticipate it would do so on this particular occasion. Nor, on the other hand, is it averred that it is usual for a belt to run off a pulley, and that means for readjusting the belt should be furnished by a master. The plaintiff characterizes the stopping of the machine by the running off of the belt as an emergency he had to meet. No complaint is made of the pulley. The belt was fastened at the ends with iron hooks instead of leather lace, "which was better and safer for tieing the belt." But a master is not bound to provide the most approved and safest appliances. The iron hooks were worn thin and turned up at the ends, and were unsafe and unsuited for such use. Yet it does not appear that they broke, or that the fact that they were worn thin and turned up at the ends caused or contributed to the injury. For aught that the plaintiff avers, the injury would not have been averted had the hooks been in the best of condition and such as were suitable for the use to which they were put. So, in its last analysis,

the grievance of the plaintiff is that he was hurt while attempting to put the belt on the pulley with a file belonging to the defendants, owing to the fact that the file was not suitable for this purpose, which fact he did not know, though they did. The question to be decided therefore is, can the plaintiff recover from the defendants on the theory that they were negligent with respect to any duty they owed him after he was confronted with the emergency of replacing the belt upon the pulley?

The plaintiff alleges that, "no means being furnished by defendants to put it on the pulley, he used a file." He does not aver that they furnished him this file for that purpose. Being himself a skilled mechanic, he assumed the risk of undertaking to supply their omission to furnish him with the proper means of accomplishing this task. He did not call on them to furnish him with the proper means, but used a file, not knowing it was hazardous to do so. Why he did not know, he does not undertake to explain; nor does he attempt to show liability on the part of the defendants on the ground that they, knowing the file to be unsafe and unfit for such a use, were bound to anticipate that he might attempt to so employ the instrument and to warn him not to do so. We do not understand that a file is made for any such use or holds out any invitation beyond that which its name implies. It would take very exact and elaborate pleading indeed to state a case such as that just suggested, where the person injured was an expert workman. The gravamen of the plaintiff's charge of negligence is that "defendants neglected to provide any safe means to put on said belt after it run off, and nothing at all except said file." He not does say the file was provided for the purpose for which he used it, but merely that there was not "any other means at hand for use in such emergency." Read in the light of the facts positively stated and the plaintiff's assertion that, "no means being furnished by defendants to put [the belt] on the pulley, he used a file," his further allegation that "said file was unfit and unsafe for the use thus *intended* by defendants in putting on said belt" is not the equivalent of an unqualified averment that the defendants in fact furnished him with the file to be used for that purpose. Considered as an allegation that they contemplated that he should use the file as he did, notwithstanding they knew it was unfit and unsafe for the purpose, this allega-

tion amounted to no more than a statement of a bare conclusion unsupported by the facts recited, and resting alone upon the unwarranted assumption that, as no other means were at hand, the defendants must have intended that the plaintiff should make an improper use of the file. The defendants, by their demurrer, admitted such facts only as were well pleaded. It is not to be arbitrarily presumed that the plaintiff, in framing his pleadings, resorted to duplicity and meant to allege (1) that the fact was that the defendants furnished him with no means at all for replacing the belt on the pulley, and (2) that the fact was that the defendants deliberately furnished him with the file to be used for that purpose, intending that he should so use it, though they knew it could not with safety to him be so used. Rather should the plaintiff's petition be so construed as to render its allegations consistent. The alleged comment of McCurry, made immediately after the injury, that, a few days before, he "came very near being hurt in the same way," justifies the inference that he had himself put the file to a similar improper use, and well knew the danger of so using it. However, the plaintiff fails to allege that the danger was not one open and obvious to a mechanic of ordinary prudence, skill, and experience, or that for any reason the defendants owed him an affirmative duty to warn him against an improper use of the file. If such was the real truth of the matter, he should not have hesitated to so declare. Apparently the plaintiff was too dazed by his injury to have any clear conception as to the precise mental process whereby he arrived at the conclusion that the defendants were liable to respond to him in damages. Certain it is that he did not in his petition present any reasonable theory upon which they could be held legally responsible for his injury; and this being so, the trial court properly sustained their demurrer to his petition.

*Judgment affirmed. All the Justices concur.*