No. 17.—JOHN THOMPSON, plaintiff in error, *vs.* MARK D. WRIGHT, defendant in error.

No. 18.—MARK D. WRIGHT, plaintiff in error, *vs.* JOHN THOMPSON, defendant in error.

[1.] If an answer of a witness to interrogatories, understood in one way, will make his answers admissible, understood in another way, will make them inadmissible; and it is doubtful from the answer in which of the two ways it ought to be understood, the question on the answer is one of fact, and therefore, the answer and the other answers should be sent to the jury to be regarded, or disregarded, by them, according to the one of the two ways in which they determine the question.

[2.] To an attachment founded on the ground that the defendant is "actually removing out of the limits" of the county, it is a good defence that the defendant resides in another county.

Attachment and motion for new trial, in Lee Superior Court. Decision by Judge ALLEN, March Term, 1857.

Both parties excepted to the decision of the Court below, and the causes were heard together, in the Supreme Court.

Mark D. Wright sued out an attachment against John Thompson; claiming that Thompson was indebted to him the sum of $350, for overseeing for him in the year 1847; and as a ground upon which the attachment issued, he swore that Thompson was actually removing out of the limits of Lee county, so that the ordinary process of law could not be served upon him. The attachment issued 10th February, 1848.

The defendant, Thompson, traversed the affidavit and denied that, at the time of the issuing of the attachment, he was a citizen of Lee county, or had been since February, 1847, but averred that he was then and still continued to be a citizen of Early county.

He also pleaded to the declaration:

1st. The general issue.

2d. A special plea, that plaintiff was employed by, and overseed for him and Robert Thompson as partners, and that he was not indebted to him severally and individually.

3d. That plaintiff neglected and failed to discharge his duty as overseer, whereby defendant was greatly injured, &c.

4th. That he treated the negroes and stock barbarously, whereby defendant was damaged to the amount of $1,000, &c.

Upon the trial, plaintiff proved that he overseed during the year 1847, on the two plantations, belonging to Robert and John Thompson: That they farmed together that year; hands worked together, but each had separate hands and plantations.   That John Thompson moved from the county of Lee to Randolph, in the Spring of 1847, and has not resided there since, but was frequently at his plantation in Lee during the year; sometimes remaining as long as a week or more, superintending and controlling the affairs of the place.   From Randolph, defendant moved to Early county; and carried his hands to Early in the first of the year 1848. That his services as overseer on the two places, were worth from $350 to $400.   John Thompson worked six or eight hands, and Robert worked fifteen or twenty.   That Thompson had no wife or children; was land agent and traveled about a great deal in 1847.

Defendant proved that he left Lee county in 1847; went to Randolph with his mother and sister, where he resided for sometime, and then moved to Early, where he at present resides.

The interrogatories taken out by Thompson for Bemis and Castleberry were rejected on the ground that the answers were furnished on hearsay; the part of Bemis's answer relied on to support this ground, was as follows: "Cannot recollect when I visited defendant's house first, but know that defendant came here in the year 1847, because he came here and moved upon his plantation before the party from

whom he purchased had moved off, and witness was informed of the fact by the party from whom he purchased, and this was about the latter part of November, 1847, or previous to Christmas, for the party from whom defendant purchased, moved off before Christmas, 1847, and that he left defendant in possession."

The part of Castleberry's answer relied on to support this ground was as follows: "Knows that defendant's residence was in Early, from the fact that the occupant of the plantation that defendant purchased informed witness that defendant had purchased the plantation and that he, defendant," [had moved] " to the residence before the occupant had left. This was the latter part of the year 1847, or before Christmas."

The jury found a verdict for Wright, the plaintiff; and thereupon Thompson, the defendant, moved for a new trial on the following grounds, viz:

" 1st. Because the Court erred in ruling out the answers to interrogatories of William Castleberry and Charles F. Bemis." (See above.)

" 2d. The Court erred in trying the traverse of the defendant and the main issue together."

" 3d. Because the Court erred in charging the jury "that if the plaintiff overseed for Robert Thompson and John Thompson jointly, during the year 1847, then they could not find for plaintiff, unless John Thompson, in making the contract, specially agreed to pay the debt himself;" there being no evidence whatever, that defendant had entered into any such special undertaking; and if there had been, to make it the special debt of one of the parties, it was necessary for the plaintiff in the agreement to have consented to have taken the individual liability of the defendant."

" 4th. Because the finding of the jury was contrary to evidence."

" 5th. Because the finding was contrary to law."

" 6th. Because the finding of the jury was contrary to the

charge of the Court in this; "that if the residence of the defendant at the suing out of said attachment was in the county of Randolph or Early, they must find for defendant." And again, in this; "that if from the evidence, they were satisfied that the services of plaintiff were rendered for the joint benefit of Robert and John Thompson, they could not find for the plaintiff."

This motion the Court sustained, and put its judgment according to the bill of exceptions of Wright, on the 4th, 5th, and 6th grounds; but according to the bill of exceptions of Thompson, on the 4th and 6th grounds only. The grounds on which the Court did not put its judgment, it overruled.

Wright excepted to the judgment granting the new trial, insisting that none of the grounds were good.

Thompson excepted to that judgment, insisting that the overruled grounds were as good as the others.

Lyon, for plaintiff in error.

McCoy & Hawkins, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

In this case, both parties present themselves as plaintiffs in error. There was no necessity for this. It can never be necessary that the successful party should make out a bill of exceptions, and come to this Court as plaintiff in error. As defendant in error, he can always have the benefit of the grounds which he would put in his bill of exceptions; and that, although the Court below may set no value on those grounds. The judgment of a Court is right, or wrong, in the opinion of a revising Court, according to *the facts of the case, as they exist;* not according to the lower Courts estimate of those facts. *See Toombs vs. Pope, and Pope vs. Toombs,* 20. *Ga.* 763.

In this case the Court below granted a new trial, putting its judgment on some of the grounds contained in the mo-

tion for the new trial, and refusing to put its judgment on the others of those grounds.

The general question for this Court may, therefore, be said to be this; was the Court below right in its estimate of the grounds of the motion?

The first of these, was, that the Court ruled out the answers of Castleberry and those of Bemis, to interrogatories.

The ground on which the Court went in doing this, was, that those answers were founded on *hearsay;* and that this was apparent from the answers themselves.

[1.] We agree, that this ground is good as to the answers of Castleberry; but we think, that it may, or may not, be good, as to the answers of Bemis. We think, that it does not appear, with certainty, from the answers of Bemis, whether those answers were founded on hearsay or not. We think, that those answers leave this question in some doubt, and therefore, we think, that they should have been submitted to the jury, that the jury might determine the question, and according to that determination, regard or disregard the answer. The question was one of *fact*, and as much one for the jury, as it would have been, had the answers been given by the witness under an examination in the presence of the jury.

It is useless to specify the particulars by which, we are led to these opposite conclusions about the answers of these two witnesses.

We think, then, that this first ground of the motion, was good, so far as the ground concerned the answers of Bemis; and was not good, so far as it concerned the answers of Castleberry.

The second ground in the motion, was abandoned in this Court by the counsel for the movant. We think, there was nothing in that ground.

As to the third ground, we merely say, that, in our opinion, there was enough in the evidence, to justify the Court in making the charge complained of in that ground.

As to the fourth, we think it true, that the finding *was* con-

trary to the evidence, i. e. the finding on the point of *residence.* We think that the evidence proves beyond a doubt, that John Thompson had removed from Lee county, before the attachment was sued out; and, that when it was sued out, he was residing in Early, or perhaps in Randolph; but, certainly, in one, or the other, of those two counties.

As to the fifth: if the verdict was contrary to the evidence on this point of residence, it was contrary to law. But see what may be said on the next ground which is the last.

As to that ground. The complaint in that ground is, that the verdict was contrary to two of the charges of the Court, viz: the charge, that if the residence of Jno. Thompson, the defendant in the action, was at the time of the suing out the attachment, in Early or in Randolph, the jury must find for him; and the charge, that if the jury were satisfied, that the services of Wright, the plaintiff in the action, were rendered for the joint benefit of Robert and John Thompson, they could not find for the plaintiff.

We think it true, that the verdict *was* contrary to the first of these two charges; but we cannot say, that we think it true, that the verdict was contrary to the second of them. The second of them was *hypothetical;* and the hypothesis was *such,* as to leave it optional with the jury to find a verdict for the defendant, according as they might think the fact to be, that the services were rendered for John Thompson alone, or for John Thompson and Robert Thompson, jointly.

If it be true that the verdict was contrary to the first of the two charges, the only question is, was the charge right.

[2.] And we think that it was. The Constitution says, that cases "shall be tried in the county wherein the defendant resides:" and it cannot be, that a case is less a case, because the process in it happens to be extraordinary, rather than ordinary.

Besides the Act of 1810, amendatory of the Act to regulate attachments, says; " and the said defendant or defendants" [in the attachment] " may file his, her, or their defence,

to the petition or declaration, of the attaching creditor, or creditors, and enter into the same defence, as if the property attached had been replevied." *Cobb's Dig.* 75.

Now when the property attached has been replevied, the attachment becomes dissolved; and the case stands as if it had been founded on ordinary principles. Therefore, when this is so, the case stands subject to any defence that it would have been subject to, if it had been founded on ordinary process. And it is not disputed, that a case founded on ordinary process, stands subject to the defence, that the defendant resides in another county than that in which the case has been brought.

We have thus stated what we think of the estimate put by the Court, on the several grounds contained in the motion for a new trial.

And it appears, that we think that the Court was right in granting the new trial; and also, that we think, that the Court might have put its judgment on another ground, besides the two on which it did put that judgment, viz: the ground, that it ruled out Bemis's interrogatories; but that it was right in not putting its judgment on any of the remaining three grounds.

Judgment, granting new trial, affirmed.