758. CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY *v.* PLESS & SLADE.

1. In cases of attachment, the giving of a replevy bond, the filing of a general demurrer, and an answer, without protestation, each operates to convert the action from a suit in rem into an action in personam; and the case, so far as obtaining a common-law judgment against the defendant in attachment is concerned, is in the same condition as if

there had been an action begun in the usual form followed by personal service.

(a) Where the defendant in attachment has, by any of the methods mentioned above, effected a general appearance in the suit, the dismissal of the attachment·does not operate to dismiss the suit.

(b) Where the defendant in attachment enters a special appearance and calls in question the validity of the attachment and of the levy thereon, but also gives a replevy bond and enters a general appearance (his surety not complaining), a consideration of the grounds of the special appearance is immaterial.

2. A defendant in attachment who has made a general appearance in any of the methods stated in the preceding headnote may by timely pleadings nevertheless question the venue of the action or the court's jurisdiction of the subject-matter. He may make any defense he could have made if he had been personally served with process.

(a) A non-resident corporation is, except in certain cases where by statute the contrary is prescribed, subject to suit in any county in this State where it can be served or where it submits itself to the jurisdiction of the court by a general appearance.

(b) The statutory rule confining suits against railway companies for torts to the county where the cause of action arose does not apply to torts committed beyond the limits of the State by non-resident railway companies.

(c) Foreign corporations are subject to attachment in this State, whether they do business herein or not.

3. Where a shipment of goods is delivered in good order to a common carrier under a contract that it shall transport them to its terminus and deliver them to a connecting carrier, and the shipment arrives at destination in a damaged condition, and the proof shows that at least a portion of the damage was done by the initial carrier, it will be presumed to have caused the whole damage, until it submits proof to the contrary.

Attachment, from city court of Cordele—Judge Strozier. August 15, 1907.

Argued December 16, 1907.—Decided January 15, 1908.

*Crum & Jones,* for plaintiff in error. *Hill & Royal,* contra.

On May 11, 1907, Pless & Slade sued out, before the city court of Cordele, an attachment against the Cincinnati, New Orleans & Texas Pacific Railway Company on the ground of non-residence, and caused it to be levied on a box-car of that company, found in the yard of the Atlanta, Birmingham & Atlantic Railway Company, at Cordele. During the same month the defendant executed a statutory replevy bond. Subsequently the defendant entered a special appearance, and made a motion to quash the attachment, upon many grounds, presenting a number of nice propositions of law; but as it is decided that they are not properly before the court for

decision, it is unnecessary to set them out. The defendant also filed a plea to the jurisdiction, which it protested was likewise filed as a special appearance; and in this plea substantially the same questions were raised. The special appearance, motion to quash, and plea to the jurisdiction were stricken by the court on demurrer. At the first term the plaintiffs filed their declaration in attachment, showing that their suit against the defendant company was on account of damages to a shipment of live stock entrusted to it in the capacity of common carrier. To this declaration the defendant filed a demurrer, without protestation and without in any wise declaring it to be filed subject to the special appearance; the grounds being (1) that the defendant is shown to be a non-resident corporation and is not alleged to be transacting business or to have an office or agent in this State; (2) that it does not appear that the acts of negligence were committed in Crisp county within the jurisdiction of the city court of Cordele, but it appears that they were committed beyond the limits of the State; (3) that the contract of carriage was made beyond the limits of the State, and the court was therefore without jurisdiction. The court overruled the demurrer. The defendant also filed an answer. Upon its face it was declared to be subject to the demurrer just filed, but was not otherwise limited in its effect as a general appearance. On demurrer the court struck a portion of this answer, which pleaded that the court was without jurisdiction, because the defendant was a non-resident corporation not doing business in the State, and because the car levied upon was an instrumentality of interstate commerce. To all of these rulings exceptions were duly preserved. The case proceeded to trial. The plaintiffs proved that they delivered the shipment of live stock to the defendant at Wilmore, Kentucky, to be transported to Cordele, Georgia, and that after an unreasonable delay the shipment arrived in Cordele damaged in certain enumerated particulars. The shipment was made over connecting lines, and the delivery was made by the Georgia Southern & Florida Railway Company. It was also shown that some of the damage occurred before the shipment left the custody of the defendant. The defendant introduced in evidence a duly signed live-stock contract in usual form, executed at Wilmore, Kentucky, but offered no further proof as to how the loss occurred. The plaintiff then introduced that portion of the con-

stitution of the State of Kentucky which provides, "No common carrier shall be permitted to contract for relief from its common-law liability." Upon the conclusion of the evidence, counsel for both parties agreeing that there was no dispute as to the amount of recovery, if any at all was authorized, the court directed a verdict for the plaintiff, and exception to this is taken.

POWELL, J. (After stating the facts as above.)

The giving of the replevy bond was a general appearance by the defendant, dissolving the attachment and converting it from an action in rem into an action in personam. *Thompson* v. *Wright,* 22 *Ga.* 607; *Walter* v. *Kierstead,* 74 *Ga.* 19; *King* v. *Randall,* 95 *Ga.* 449; *Woodbridge* v. *Drought,* 118 *Ga.* 671. "When the defendant has given bond and security, as provided in this code, or when he has appeared and made defense by himself or attorney at law, or when he has been cited to appear, as provided in this code, the judgment rendered against him in such case shall bind all his property, and shall have the same force and effect as when there has been personal service, and execution shall issue accordingly." Civil Code, §4575. Originally, at common law, all suits were begun by seizure of the defendant's person or property and the defendant appeared by giving bail. Now suits are, for the most part begun by service of process; but in certain cases where it is inconvenient or impossible to serve common process, the law still recognizes the right to seize the property of the defendant for the purpose of compelling an appearance. The attachment is in such cases the process, and whenever the defendant obtains that for which process is designed, namely, notice of the pendency of the action, and, being so notified, appears in any manner which lawfully discloses to the court that he has the notice, the process is functus officio, its regularity and efficiency are no longer in question, and the court, having the person of the defendant before it, proceeds to trial and to judgment as in actions begun in the ordinary form. The dismissal of the attachment does not operate to dismiss the suit, but the plaintiff may proceed upon his declaration for a common-law judgment. Civil Code, §4557; *King* v. *Randall,* supra. The giving of a replevy bond is a judicial admission of notice, equivalent in effect to acknowledgment or waiver of personal service. *Camp* v. *Cahn,* 53 *Ga.* 558; *DeLeon* v. *Heller,* 77 *Ga.* 742. If the attachment is for any reason subject to dis-

missal, the lien acquired by the levy falls and the surety on the replevy bond is discharged; but "the attachment, whether good or bad, brings the defendant into court, if he is served with notice, or if he appears and defends, or if he replevies the property, and he remains in court, though the attachment be dismissed." *Bruce* v. *Conyers,* 54 *Ga.* 678, 680. Even after judgment the surety on the bond may complain that the attachment is void; but not the main defendant. See *Planters Bank* v. *Berry,* 91 *Ga.* 266. The defendant in attachment has the right to appear and defend whether he enters special bail or not. "Nor does it make any difference that the defendants are citizens of another State. The right of a citizen of another State to appear and answer in our courts of justice can not be questioned. Whether he will do so or not is for his determination. In some cases he loses nothing if he does not, for the 'judgment would not conclude him; in attachment, however, he must appear and defend at his peril." *Reid* v. *Moore,* 12 *Ga.* 370. If he does not replevy, and makes only a special appearance to question the power of the court to issue the attachment, as was done in the case of *Associated Press* v. *United Press,* 104 *Ga.* 51, the court is not, when the special appearance is sustained, authorized to proceed further; for the process has proved ineffectual to bring the defendant into court. *Bell* v. *New Orleans & Northeastern R. Co.,* 2 *Ga. App.* 812 (5), (58 S. E. 103), and cit. But the filing of a general demurrer or an answer not under protestation, and without expressly reserving the special appearance, waives the special appearance. *Lyons* v. *Planters' Bank,* 86 *Ga.* 485; *Savannah Ry. Co.* v. *Atkinson,* 94 *Ga.* 780; *Pacific Selling Co.* v. *Albright-Prior Co.,* 3 *Ga. App.* 138 (59 S. E. 468). The defendant having, by filing a replevy bond, a demurrer, and an answer, submitted itself personally to the jurisdiction of the court, with the right to make only such defenses as it could have made if it had been personally served with process, and the surety on the replevy bond making no complaint against the judgment, it becomes immaterial whether the levy of the attachment was regular or not, or whether the property seized was subject to levy; and these questions are therefore not for decision. *King* v. *Randall,* 95 *Ga.* 449. The defendant had the right to replevy irrespective of whether the property was subject or not subject to the levy. *Swift* v. *Tatner,* 89 *Ga.* 660, 673.

2.  While the defendant in attachment, by reason of the facts mentioned above, is precluded from saying that the court did not acquire jurisdiction of it so far as the question of the sufficiency of the attachment and levy as a means of bringing it into court is concerned, it still had the right to urge every defense it might have urged if it had been brought into court by service of ordinary process; and therefore might plead that the court was without jurisdiction, because of the character of the suit or because it was brought in the wrong venue. *Thompson* v. *Wright*, 22 *Ga.* 607 (2). The trite old saying "catching before hanging" is sound in theory and in practice, but it is without applicability when there is a voluntary surrender into the hands of the court; the question of catching is over, but the prisoner may still question the authority of him who proposes to do the hanging. The question of jurisdiction and suability as applied to non-resident corporations is not so much one of citizenship as of finding. *Reeves* v. *Southern Ry. Co.*, 121 *Ga.* 561 (49 S. E. 674, 70 L. R. A. 513); *Bell v. New Orleans & Northeastern R. Co.*, supra. We now say again what we said by way of obiter in the case of *Pacific Selling Co.* v. *Albright-Prior Co.*, 3 *Ga. App.* 138 (59 S. E. 468), that foreign corporations though they do not transact business in this State, are subject to suit by attachment; and Civil Code, §4527, which apparently restricts that remedy to foreign corporations which do transact business in this State, is cumulative and declaratory only, and was enacted to counteract the impression, which otherwise might prevail, that because such corporations, by transacting business in the State, became subject to suit in personam, they would not be subject to attachment. The point made by demurrer and plea, that the court was without jurisdiction, because the contract was made and the cause of action accrued beyond the limits of the State and not in the county of Crisp, while properly before us for decision, is not well founded. The same point was before us in *Lytle* v. *Southern Ry. Co.*, 3 *Ga. App.* 219 (59 S. E. 595), and was decided adversely to the contention of the plaintiff in error.

3.  As to the case on its merits, the plaintiffs proved that they delivered the stock to the defendant in good order, and that it was delivered at destination by the connecting carrier in bad order. They further proved that the defendant did not deliver to the next connecting carrier in good order, though they were not able to

prove directly that all the damage occurred while the shipment was in the possession of the defendant. The defendant's only reply was to show the contract of shipment. Under the law of Kentucky, where the contract was made, it was void so far as it attempted to vary the carrier's common-law liability, but it was valid so far as it specified that it undertook to carry the shipment only to the terminus of its own line and there deliver it to the connecting carrier. Ireland v. M. & O. R. Co., 105 Ky. 400; Pittsburg Ry. Co. v. Viers, 113 Ky. 526. In case of an entire loss of the goods, prima facie a presumption would arise that the initial carrier lost them. So. Ry. Co. v. Montag, 1 Ga. App. 649. In addition to the authorities cited in support of this proposition in the Montag case, see L. & N. R. Co. v. Jones, 100 Ala. 263, and Brintnall v. Ry. Co., 32 Vt. 665. The North Carolina Supreme Court, in the case of Meredith v. Ry. Co., 137 N. C. 478, decides that the reason and the rule both hold good when applied to a case where the shipment is not entirely lost but is damaged in transit, and places upon the initial carrier the burden of showing that the injury did not occur while in its possession. The Massachusetts court (Farmington Co. v. Railway Co., 166 Mass. 154) and the Alabama court (L. & N. R. Co. v. Jones, 100 Ala. 263) hold that as to merely damaged shipments the presumption does not arise against the initial carrier. The Alabama court places its decision upon the ground that the presumption in such cases is against the last carrier. The Supreme Court of Arkansas, while recognizing the general rule as announced by the Massachusetts and the Alabama courts in the cases just mentioned, held, in the case of St. Louis Ry. Co. v. Coolidge, 67 L. R. A. 555, that whenever it is shown that the goods were partly damaged in the possession of the first carrier, it will be held liable for the whole damage, unless it can by proof shift all or a part of the liability to another. When goods are delivered to a bailee in good condition, the burden, for obvious reasons, is, and should be, on the bailee, to show that he redelivered them to the bailor or to the person or other bailee who is to receive them for the bailor under the contract. Now it may be logically consistent to hold, as did the Alabama court in the Jones case supra, that when it is shown that the goods were delivered by the original bailee, the initial carrier, to the next carrier, and there is no proof as to the condi-

tion of the shipment at that time, the law will presume that the goods were in good order, and that therefore the presumption against the first carrier is relieved; this on the theory that since a carrier is not bound to receive goods in bad order, it will be supposed that the second carrier would not have received them in a bad condition. See *Ohlen* v. *A. & W. P. R. Co.,* 2 *Ga. App.* 323 (58 S. E. 511). But when there is proof that the shipment was already somewhat damaged before it left the custody of the first carrier, there can be no presumption that the second carrier received it in good order, and, as held by the Arkansas court in the Coolidge case, the burden remains upon the initial carrier of showing itself free from liability for each and every portion of the damage. The initial carrier in the case at bar offered no proof, and, the amount of damage being uncontested, the court did not err in directing a verdict for the plaintiff. We may add that where a through contract of shipment is made, the burden is always on the initial carrier to show its freedom from fault, even though there be a valid contract that each carrier shall be responsible only for damage occurring on its own line; this for the reason stated in the *Montag* case, supra.    *Judgment affirmed.*

