ZUBER v. PENNSYLVANIA R. CO.

SLATON v. CHICAGO, R. I. & P. RY. CO.

HALL v. CHICAGO, R. I. & P. RY. CO.

HARPER v. FREEMAN SHOE CORPORATION.

Civ. A. Nos. 546, 3291, 3293, 420.

United States District Court
N. D. Georgia, Rome Division.

Feb. 15, 1949.

No. 546:

James Maddox (of Maddox & Maddox) and Slaton Clemmons, all of Rome, Ga., for plaintiff.

Dean Owens (of Matthews, Owen & Maddox), of Rome, Ga., for defendant.

No. 3291:

Clarence D. Stewart, of Atlanta, Ga., for complainant.

John L. Tye, Jr. (of Tye, Thompson, Tye & Edmondson), of Atlanta, Ga., for defendant.

No. 3293:

Jake B. Joel, of Athens, Ga., for complainant.

John L. Tye, Jr. (of Tye, Thompson, Tye & Edmondson), of Atlanta, Ga., for defendant.

No. 420:

H. A. Stephens, Jr., and R. Wilson Smith, Jr. (of Smith & Stephens), both of Gainsville, Ga., for complainant.

A. C. Wheeler (of Wheeler, Robinson & Thurmond), of Gainesville, Ga., for defendant.

RUSSELL, District Judge.

There are pending before the Court four cases in three of the several divisions of this Court, which, while not involving identical questions, are yet substantially similar. Each suit has to do with proceedings against non-residents of this State, and the validity of service upon and proceedings against the respective defendants by which they are sought to be subjected to the jurisdiction of this Court.

The cases are therefore considered together.

In none of the cases is there any dispute as to the facts, and no detailed statement of facts is necessary further than to explain the rulings here made.

In the two cases against the Chicago, Rock Island and Pacific Railway Company, which will be hereinafter referred to as the Rock Island, the complainants are each residents of the State of Georgia, and in separate suits seek to recover for themselves and their minor children, for the death of their husbands which resulted from the same occurrence in the State of Kansas while a train upon which the husbands, soldiers in the United States Army, were as alleged, being transported to Fort McPherson, Georgia.

The train upon which they were riding was being at that time operated by the defendant, Rock Island Lines. The Rock Island Lines neither owns nor operates any lines of railroad in the State of Georgia, nor has it ever been licensed or granted a franchise by the State of Georgia to do business therein; it has what is denominated a Georgia agent, but who, under the evidence, has no duties or authority, nor does he assume any, other than the solicitation of freight and passenger traffic to be routed over the lines of the defendant outside of the State of Georgia on shipments and carriage moving from and to Georgia. For the purpose of this solicitation it maintains an office in Atlanta employing some seven people and has therein office furniture which is returned for taxation. In the time table published by the defendant the

general soliciting agent is listed as a general agent. There is no proof in the record that the soliciting agent in Georgia had any connection with the inauguration of the passenger movement of the United States soldiers which was under the control and direction of the United States Army, or that the defendant had any knowledge of the ultimate destination of this movement. It is therefore a fair inference that there was no definite destination such as would be the case of a private transportation contract, as a change in destination was subject to the discretion and needs of the military authorities. Service of process was had upon the soliciting agent. The defendant moved to dismiss the action, or in lieu thereof, to quash the return of service of summons, upon the ground that there was no proper service, first, because the railroad was not doing business in Georgia of the kind which made it subject to suit, and second, because the service upon the soliciting traffic agent was not sufficient in view of the nature of his duties and authority, and thirdly, (1) the Court lacks jurisdiction for the reason that the exercise of such jurisdiction would unreasonably obstruct and burden interstate commerce; (2) that the exercise of jurisdiction would deprive the defendant of property without due process and deny the defendant the equal protection of the law; (3) "that the venue herein is improper" and this Court is not a proper forum for the trial of the action under the rule of forum non conveniens. In support of the contention of undue burden to interstate commerce, allegations and proof are presented to the effect that the place of the homicide is more than twelve hundred and fifty miles from Atlanta; that the proper defense of the case would require the attendance of some twenty-five witnesses, twelve of whom are employees of the defendant; that the expenses of witnesses would approximate $6,000.00, and the absence of the employee witnesses who are directly engaged in interstate commerce in the operation of the interstate trains operated by the defendant, would create interruptions and delay in the defendant's handling of interstate business, and thus constitute a substantial burden upon interstate commerce;

that these expenses and burdens would largely be avoided if the trials were held in the United States District Court at Salina, Kansas, within the district where the homicides occurred.

In the case of Lenora Zuber against the Pennsylvania Railroad it is alleged that she is a resident of Floyd County, Georgia. She began her action against the defendant by service of a summons of garnishment upon the Southern Railway and the Central of Georgia Railway, both of which operate lines in Floyd County, Georgia, and by attachment of a freight car belonging to the Pennsylvania Railroad and located at the time in Floyd County, Georgia. Thereafter, a declaration in attachment was filed in the Superior Court of Floyd County. The garnishment, attachment and filing of the declaration were in accordance with the provisions of the Georgia law in proceedings against non-residents. In her declaration she claims damages for injuries sustained in a collision in Columbus, Ohio, between one of the defendant's engines operated over its railroad lines there and a car in which she was riding. The defendant is alleged to be a non-resident corporation.

The defendant has moved to dismiss the proceedings upon the grounds that it is not carrying on any business in the State of Georgia and that the proceeding, based upon a cause of action arising in the State of Ohio, can not be maintained in Georgia for the reason that it would be an unreasonable burden upon interstate commerce, because the defendant is an interstate railroad which has no lines of railroad in Georgia and transacts no business in Georgia, the only activity in the State of Georgia being the solicitation of carriage of freight and passengers over its lines entirely outside the State of Georgia, and that the freight railroad car is an instrumentality of interstate commerce, and the deprivation of the defendant of the free and uninterrupted use of the car imposes a direct and unreasonable burden upon interstate commerce. Further, that in order to make proper defense to the action, defendant would be put to great inconvenience and heavy expense and would suffer serious interference with the proper operation of

its railroad by having to take its employees from their customary duties, and further, that the defendant does not do business in Georgia, nor is it licensed to do business, nor has it consented to be sued therein. For second ground of the motion, it is contended that if the suit is allowed to be maintained upon the cause of action arising outside of the State of Georgia, the defendant would be deprived of the rights of due process provided by the Fourteenth Amendment. Thirdly, it is contended, for reasons substantially similar to those set forth in the motion of the Rock Island, above mentioned, that the absence of its employee witnesses resulting from their forced attendance upon the trial would create interruptions, confusion and delay of the defendant's handling of its interstate business, and thus constitute a substantial and serious burden upon interstate commerce. It is further asserted that the statutes of the State of Georgia attached as exhibits, as construed by the highest courts of this State, authorize the commencement of an action against a non-resident by the levy of an attachment and the issuance of summons of garnishment, but that these laws are not applicable to the present cause of action under the circumstances appearing in the record. However, it is contended that if they should be held to be applicable, the statutes are unconstitutional because violative of the interstate commerce and due process clauses of the Constitution of the United States. Const. art. 1, § 8, cl. 3; Amend. 14. Answering the motion, the plaintiff denies the legal conclusions of the defendant. The only facts controverted with reference to the allegations of the defendant as to doing business in the State is the assertion that the defendant transacts business by the movement of freight cars belonging to it constantly over the lines of other railroads in the State of Georgia, and further takes issue as to the extent of inconvenience which would result to the defendant by the absence of its employees, by the claim that only the engineer, and possibly, the fireman, who were operating the switch engine, would be material witnesses. The plaintiff alleges that she is a bona fide resident of the State of Georgia and has been all of her life and that she was visiting in the State of Ohio at the time she sustained her injuries, and that her medical treatment, with the exception of first aid, was all in Floyd County where her medical witnesses reside. This case was submitted upon the pleadings and record.

In the case of Harper against Freeman Shoe Corporation, Harper, a resident of Florida, instituted action in this Court against the defendant corporation, organized under the laws of Wisconsin, and with its principal office and place of doing business there. It is alleged that the defendant is engaged in the manufacture, distribution and sale of shoes throughout the United States, and particularly in the State of Georgia and this district, and has for many years been so engaged in the continuous and regular solicitation of orders for its shoes in the State of Georgia and in this district through representatives employed for the purpose to call on various outlets displaying said shoes and procure orders therefor which are thereafter shipped by the defendant in fulfillment of the orders so secured, resulting in a continuous flow of defendant's shoes in substantial volume into the State of Georgia. The suit seeks the recovery of unpaid commissions on sales made by the plaintiff under employment by the defendant as its salesman "to call on, solicit, and procure orders for its goods from the various persons, firms and organizations acting as outlets therefor in the States of Georgia and Florida" and that a portion of the unpaid commissions arose from sales made by the plaintiff to persons and firms in the State of Georgia and in this district. Service was directed to be, and was, made upon the Secretary of the State of Georgia in accordance with the provisions of the Georgia statute authorizing such service against non-resident corporations doing business "in this State." Code, § 22-1507. By its first defense, defendant moves to quash the service of summons on the ground that it is neither doing business in the State of Georgia, nor maintaining an office, agent or place of doing business therein, nor has it designated any officer or agent to accept service for

it. It is asserted that the only business in which the defendant was interested was the taking of orders for shoes by traveling salesmen, which orders were forwarded to defendant at its home office in the State of Wisconsin and there accepted or rejected on the basis of credit approval and business delivery quotas. After such orders were accepted, in whole or in part, shipments of the shoes were made to the several purchasers, and they were filled for the several items purchased. The facts are verified by affidavit. By its second defense, the defendant further objects to the jurisdiction of this Court and moves to dismiss the action upon the ground that it is filed in the wrong district because the jurisdiction of this Court is invoked on the grounds of diversity of citizenship and it appears that neither the plaintiff nor the defendant is a resident of this district. The case is submitted on the record and plaintiff has moved to strike the first and second defenses because of their alleged insufficiency in law.

No question is raised that the actual service was not in accordance with the statutes of Georgia. Georgia code, § 22-1507 et seq.

Taking up first the Slaton and Hall cases, the attack upon the validity of the service and the propriety of the venue, is two-pronged. There is a difference between the attack upon the ground of deprivation of due process because the defendant is not actually present in the State because of the restricted nature of the activities there engaged, and such invalidity of service and subsequent proceeding upon the ground that to permit the retention of jurisdiction in a State where a defendant does not do its railroad business constitutes an unreasonable and unlawful burden upon interstate commerce. Michigan Central Railroad Company v. Mix, 278 U.S. 492, 496, 49 S.Ct. 207, 73 L.Ed. 470; Davis v. Farmers' Co-operative Equity Company, 262 U.S. 312, 318, 43 S.Ct. 556, 67 L.Ed. 996.

So far as concerns the question of affording due process of law, there is no difference between interstate railroad corporations and any other corporation. When we come to consider the question of undue burden upon interstate commerce, however, there a difference arises,—as stated in Davis v. Farmers' Co-operative Equity Company, supra, and recognized in others, —that the efficient and economical operation of railroad transportation is a matter of public concern and sought to be promoted by law. Simom v. Southern Railway Company, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; Louisville & N. R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711.

In several adjudications the determination of the question of due process is made upon consideration of the extent in which the defendant is engaged in "doing business" in the State of suit, together with other relevant considerations. See Davis v. Farmers' Co-operative Equity Co., supra, 262 U.S. at page 318, 43 S.Ct. 556, 67 L.Ed. 996, and especially cases cited in note 5. This basis may be outmoded in view of the language of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057. It must be conceded that, unfortunately, there has been no attempt to set up any standard by which it may be determined whether the extent of activity is sufficient to constitute a doing of business sufficient to subject a non-resident defendant to service of process. It may prove as difficult to apply the test stated in International Shoe Company v. Washington, supra. However, it is perhaps wiser for a district court to restrain what might be at times a natural desire to explore all points which might lurk in a question and confine itself to a determination of those necessary for adjudication of the case before it.

In the present case, so far as the question of the deprivation of due process is concerned, the facts of the case are in all respects similar, but not identical, with those appearing in Green v. Chicago, Burlington & Quincy Railway Company, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. Indeed, the proof shows less activity of the soliciting agent in the present than in the Green case. The Green case is referred to in a later adjudication by the Supreme Court, International Harvester Company v. Kentucky, 234 U.S. 579, 34 S.Ct. 944,

946, 58 L.Ed. 1479, as "an extreme case" but the Court expressly stated "no desire to depart from that decision." The decision in the Green case is not expressly predicated upon the due process clause, but it is so considered in later adjudications. See Davis v. Farmers' Co-operative Equity Company, supra, and citations in note 5. The holding there, though frequently cited in subsequent adjudications, has not been modified or overruled. In the recent case of International Shoe Company v. Washington, supra, holding that solicitation of orders and other activities were sufficient to subject the defendant to the enforcement of liabilities growing out of such doing of business, the Court notes the Green case and cites it and People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S. Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537, to be compared with International Harvester Company v. Kentucky, supra. In the International Harvester case, service was upheld because the agent performed other business than solicitation. In the People's Tobacco Company case service was quashed, the ruling being placed upon the ground that the agents of the defendant in that case did nothing but sell. The comparison shows that the extent of activities additional to those involving solicitation and sales, is material and might well result in different rulings. The Green case is cited and followed in the People's Tobacco case, supra, and also cited without criticism in the International Shoe case, supra, 326 U.S. at page 318, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057. In Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, it is ruled that the shipment of cars belonging to non-residents over lines of railroads operating in the State, and when there are additional activities of authorizing another railroad company to sell coupon tickets for the non-resident company, is not doing business in the sense which will subject the non-resident to service of process in the foreign jurisdiction. Sufficient it is to say in this Court that an examination of the authorities reveals that the Green case, supra, is still declaratory of the law. This Court is not only a believer in the validity and necessity of precedent and the rule of stare decisis within proper limits, but whether or not a believer, it is certainly bound. If changes in the application of the laws should be made, and well they might be in some aspects of this question, such change is a matter for more authoritative courts.

■ Application here of the ruling in the Green case requires a holding that service in the Rock Island cases is not effectual. While the sufficiency of the service of process to maintain jurisdiction of the federal courts is a matter of federal law and for determination by the federal court in which a cause is pending, Goldey v. Morning News, 156 U.S. 518, 522, 15 S. Ct. 559, 39 L.Ed. 517; Mechanical Appliance Company v. Castleman, 215 U.S. 437, 446, 30 S.Ct. 125, 54 L.Ed. 272, in the present case the result is also in accord with the Georgia laws with reference to cases in the State courts. Vicksburg, Shreveport & Pacific Ry. Co. v. De Bow, 148 Ga. 738, 98 S.E. 381.

■ In view of the conclusions just announced, there may be no real necessity of discussing the ground of the Rock Island's motion based upon the alleged unlawful interference with interstate commerce. However, in view of the fact that the ruling is predicated upon the Green case, supra, which is here questioned as not in accord with present trends in law, and as the question of the burden in such an instance upon interstate commerce is likewise presented in the Zuber case, it may be well to deal with this question with reference to both the Slaton and Hall cases as well as the Zuber case. The case of Davis v. Farmer's Co-operative Equity Co., supra, is determined solely upon this ground, though the objection that the prosecution of the suit would violate the due process clause was likewise urged. It was there ruled "Solicitation of traffic by railroads, in states remote from their lines, is a recognized part of the business of interstate transportation." [262 U.S. 312, 43 S.Ct. 557] The Minnesota statute, M.S.A. § 543.08, which expressly related to agents of corporations in that State for the Solicitation of freight and passenger traffic, and provided that such agents might be lawfully and effectually served by delivery of

a copy of summons, and as it was construed to allow jurisdiction "whatever the nature of the cause of action, wherever it may have arisen, and although the plaintiff is not, and never has been, a resident of the state" was held to impose upon interstate commerce a serious and unreasonable burden which rendered the statute obnoxious to the commerce clause. That service upon such an agent was authorized by express statute in the one case, or whether sought to be maintained merely because of otherwise due service upon such agent in another case, of course presents no material difference. Thus the ruling in the Davis case is applicable here except for the one feature, referred to there, of the non-residence of the plaintiff in the suit, for here the plaintiffs are residents. This difference, in view of the ruling in International Milling Company v. Columbia Company, 292 U.S. 511, at page 517 et seq., 54 S.Ct. 797, 78 L.Ed. 1396, which cites the Davis case, supra, and subsequent like holdings, as well as others in which different results were reached because of different circumstances, is not deemed material. The question of whether the mere residence of the plaintiff in the state of suit was sufficient to change the result, as had been intimated in the Davis case, was there considered. The decision places the case of Denver & Rio Grande Western R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295, "in line" with those decisions holding that the carrier was subject to suit. However, in doing so, attention is expressly called, in the International Milling Company case, to the fact that in the Terte case the action was by a plaintiff who was a resident of Missouri, the State in which suit was instituted, upon a cause of action for personal injuries suffered in Colorado. In discussing the Terte case, the Court said [292 U.S. 511, 54 S.Ct. 799]: "There were two defendants, the Rio Grande Railway Company and the Santa Fe. The first, a Delaware corporation, did not operate a railroad in Missouri, but had a *traffic agency only*. As to it the suit was dismissed upon the authority of the Davis case. The other defendant had part of its line in Missouri, though the accident occurred elsewhere. Cf. Hoffman v. Foraker, 274 U.S. 21, 47 S.Ct. 485, 71 L.Ed. 905. As to the defendant so situated, jurisdiction was upheld. The groups are clearly marked, and also the reasons for the grouping." (Emphasis supplied.) The question of the residence of the plaintiff was expressly considered, but the Court said: "we do not hold that the residence of the suitor will fix the proper forum without reference to other considerations, such as the nature of the business of the corporation to be sued. Denver & Rio Grande Western R. Co. v. Terte, supra, is opposed to such a holding. Residence, however, even though not controlling, is a fact of high significance. Our next inquiry must be whether there is anything in the nature of the activities of the defendant to overcome its force." The Court thereupon considered the nature of the activities of the defendant which included transportation in the State of Minnesota where the suit was instituted; the maintenance of an agent in the State to facilitate the loading and unloading of cargoes, etc., and concluded in effect that the nature and extent of the business activities of the defendant were sufficient to maintain the suit, quasi in rem, at the instance of a creditor, though it was conceded that "such a suit may be a burden, but oppressive and unreasonable it is not." The Court adverts to the case of State of Missouri v. Taylor, 266 U.S. 200, 45 S.Ct. 47, 69 L.Ed. 247, 42 A.L.R. 1232, and states that it and the Terte case "to the extent that the latter case involved a suit against the Sante Fe, supply, when read together, the applicable rule, and sustain the jurisdiction of the Minnesota courts." One can conceive of no clearer rejection of the idea that the residence of the plaintiff in the State of suit alone, not supported by any other circumstances of business activity by the defendant except the presence of a traffic agency, will maintain jurisdiction than is presented by the ruling in the Terte case, as construed and confirmed in the International Milling Company case. In view of the fact that the sole business activities in Georgia of both the Rock Island Line and the Pennsylvania Railroad is the maintenance of soliciting freight and passenger agencies, the residence of the plaintiffs in these three cases within the

State of Georgia is not sufficient to maintain their respective actions because, under the facts and the law, to permit this would impose an undue and unlawful burden upon interstate commerce.

■ The above states the real difficulty confronting the plaintiffs which prevents the maintenance of their suits. If the forum is in other respects appropriate "jurisdiction is not lost because the property subjected to the attachment is an instrumentality of commerce." International Milling Company v. Columbia Co., supra, citing Atchison, T. & S. F. Ry. Co. v. Wells, 265 U.S. 101, 44 S.Ct. 469, 68 L.Ed. 928; Davis v. Cleveland, C., C. & St. L. Ry. Co., 217 U.S. 157, 30 S.Ct. 463, 54 L.Ed. 708, 27 L.R.A.,N.S., 828, 18 Ann.Cas. 907.

■ That the Pennsylvania Railroad was sought to be subjected to the jurisdiction of the Court by levy of the attachment and service of the summons of garnishment does not, under the circumstances here, present any different situation than the case where service upon a soliciting agent is attempted. As to cases where jurisdiction is inhibited because of the undue burden upon interstate commerce, this can not "be evaded merely by attaching the property of the nonresident railroad corporation. Obviously, the burden and expense which the carrier must incur in order to make defense in a state where the accident did not occur has no relation to the nature of the process used to bring it before the court." Denver & R. G. W. R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 153, 76 L.Ed. 295.

■ The contention in the Zuber case that the defendant had in effect made a general appearance in the case and waived objection to venue by filing a bond dissolving the attachment, is not meritorious. Pretermitting any discussion of the restrictive effect of state statutes and laws upon the determination by the federal courts of their jurisdiction, the point is not well taken under Georgia law, for even if the defendant be precluded from questioning the sufficiency of the attachment and levy as a means of bringing it into court "it still had the right to urge every defense it might have urged if it had been brought into court by service of ordinary process, and therefore might plead that the court was without jurisdiction because of the character of the suit or because it was brought in the wrong venue. Thompson v. Wright, 22 Ga. 607 (2)." Cincinnati, N. O. & T. P. R. Co. v. Pless & Slade, 3 Ga.App. 400, 405, 60 S.E. 8, 10. See, however, Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272.

■ There is a crucial difference between the Harper case and the two situations dealt with above. This arises from the fact that in the Harper case the subject matter of the cause of action directly relates to activities of the defendant in the State of Georgia. Whatever may be the impact of International Shoe Company v. Washington upon the decisions in the Green and McKibbin cases, supra, certain it is that it does, as to the enforcement of rights arising from activities conducted in the State of the forum, present a binding adjudication that systematic and continuous sales "establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit" [326 U.S. 310, 66 S.Ct. 160] the state to enforce the obligations which the non-resident defendant has incurred there. As clearly pointed out in that decision, the difference in results is justified by the fact that the subject matter of the suit in the latter case is directly related to local activities of the non-resident defendant. This would also seem to be the basis of the decision in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926. The distinction is an entirely reasonable one relating directly, as it does, to the fairness and justice of subjecting a non-resident corporation to suit in the forum resulting from local activities there on the one hand, and on the other providing immunity from a suit arising upon a transaction elsewhere and sought to be maintained only because such non-resident might be there engaged in transactions entirely disconnected from the subject matter of the suit. It is one matter to subject a party to suit in a State

where he conducts business for a wrong committed in the course of such conduct, and an entirely different one to say that he in there subject to suit for any transaction for a wrong done anywhere. It is this principle which differentiates the Harper case from the Slaton, Hall and Zuber cases, where the cause of action arose in other states, and is in no way connected with any activity of the defendants in the State of Georgia.

The decision in the Harper case hinges really on this question of doing business. Under the circumstances of the case, the defendant for the purposes of this suit was doing business in Georgia. While it neither had an agency nor had designated an agent for the service of process, the doing of business constituted as effectual an implied waiver and consent to suit as if it had designated an agent. In Knott Corporation v. Furman, 4 Cir., 163 F.2d 199, 204, certiorari denied 332 U.S. 809, 68 S.Ct. 111, it was held, "The consent implied from doing business in the state not only authorizes suit in the courts of the state, with service of process upon a designated state officer, but also waives the provisions of the federal venue statute so that suit can be brought in the federal court, if the elements of federal jurisdiction are present," citing Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437. The decision in the Neirbo case makes clear that the provisions of Section 112 [now § 1391], Title 28 U.S.C.A., "merely accords to the defendant a personal privilege of objecting to the venue of suits brought against him in districts wherein under the section he may not be compelled to answer," and that this privilege may be lost by submission through conduct. The Georgia statute providing for substituted service is expressly restricted to causes of action growing out of or based upon any business done in the State.

It is not disputed that the terms of the Georgia statute providing for service were complied with, nor that the defendant received actual notice of the suit.

Appropriate orders carrying into effect the conclusions of this memorandum will be entered in the respective cases.